THE NATIONAL BANK OF COMMERCE OF KANSAS CITY,
*Appellant*, v. MORRIS *et al.*

Division Two, February 14, 1893.

114  255
125  345
114  255
80a  444
114  255
162  500
114  255
99a  ¹657

1. **Chattel Mortgage**: RECORD OF: EXTRA-TERRITORIAL EFFECT: INNOCENT PURCHASER. Where cattle are mortgaged and the mortgage is duly executed and recorded according to the law of the state where the cattle then are and the mortgagor afterwards takes the cattle into another state whose public policy the mortgage does not contravene and there sells the cattle to an innocent purchaser for value, such purchaser buys subject to the mortgage, although he had no actual notice of it.

2. ———: ———: INDEPENDENT CONTRACT. The vendor of the cattle received a mortgage from the vendee and gave him a receipt which recited that the cattle were subject to a prior mortgage which the vendor agreed to have released, and, failing to do so, he agreed to return the note and mortgage given by his vendee and the sale was to be declared canceled. The mortgage did not refer in any manner to the receipt. *Held*, that the receipt was no part of the mortgage and was not required to be recorded.

3. ———: ———: ———. Where a contract is referred to in a mortgage, all persons claiming under the latter if duly recorded take with notice of such contract.

4. ———: BREACH OF CONDITION: TROVER. Where a chattel mortgage provides that, in case of sale or removal of the property, the mortgagee may take possession, and the mortgagor does remove and sell the property, the mortgagee may bring trover though the mortgage debt is not due.

5. **Trover**: DEMAND. Nor is demand necessary before bringing the suit.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*John C. Orrick* and *Horton Pope* for appellant.

(1) The English doctrine in regard to sales in market overt is not applicable in the United States

where no such usage or institution exists.    Benjamin on Sales [6 Ed.] p. 37; Tiedeman on Sales, sec. 317; Usher on Sales, sec. 37; 25 American Decisions, p. 609; *Fawcett v. Osborn*, 32 Ill. 411.    (2) The effect and validity of a chattel mortgage is determined by the laws of the *situs* of the chattel and of the residence of the mortgagor.    If it is valid there it will be valid everywhere and will be enforced by the laws of any state to which the chattel may be removed.    *Bank v. Lee*, 13 Pet. 110; *DeLane v. Moore*, 14 How. 270; *Beall v. Williamson*, 14 Ala. 55; *Hall v. Pillow*, 31 Ark. 32; *Ballard v. Winter*, 39 Conn. 179; *Mumford v. Canty*, 50 Ill. 370; *Blystone v. Burgett*, 10 Ind. 28; *Smith v. McLean*, 24 Iowa, 322; *Ramsey v. Glenn*, 33 Kan. 271; *Railroad v. Glenn*, 28 Md. 287; *Langworthy v. Little*, 12 Cush. 109; *Smith v. Hutchings*, 30 Mo. 380; *Feurt v. Rowell*, 62 Mo. 524; *McDaniel v. Bard*, 27 Mo. App. 545; *Bank v. Metcalf*, 29 Mo. App. 384; *Bank v. Metcalf*, 40 Mo. App. 494.

*Boyle & Adams* and *H. M. Pollard* for respondents.

(1) Statutes relating to registry of chattel mortgages so as to affect the rights of purchasers, innocent in fact, are in derogation of the common law and must be strictly construed.    Jones on Chattel Mortgages, [3 Ed.] sec. 248; *Porter v. Dement*, 35 Ill. 478; *Funk v. Miner*, 50 Ill. 444; *Selking v. Hebel*, 1 Mo. App. 340. (2) Plaintiff failed to show at the trial of this case that a true copy of any original mortgage was ever deposited with the registers of the counties where the mortgagors or either of them resided in Kansas.    (3) The alleged chattel mortgage and the counterpart taken together constituted the contract of mortgage made between the parties; one is as much a part of the contract as the

other; both must be treated as making the contract between the parties. *Munson v. Ensor*, 94 Mo. 504; *Brownlee v. Arnold*, 60 Mo. 79; *Neenan v. Donoghue*, 50 Mo. 493; *Lewis v. Ins. Co.*, 3 Mo. App. 372; *Railroad v. Atkinson*, 17 Mo. App. 484; *Railroad v. Levy*, 17 Mo. App. 501; *Dohm v. Haskin*, 88 Mich. 144. (4) The jury had nothing to do with the question as to whether the mortgage had been properly recorded. This was entirely a question for the court. Jones on Chattel Mortgages [3 Ed.] sec. 248; *Bailey v. Godfrey*, 54 Ill. 507; *Durfee v. Grinnell*, 69 Ill. 371; *Flynn v. Hathaway*, 65 Ill. 462; *Bullock v. Narrot*, 49 Ill. 62. (5) There was a total failure of proof. *Lanitz v. King*, 93 Mo. 513; *State to use v. Martin*, 18 Mo. App. 468; *Huston v. Forsyth*, 56 Mo. 416; *Bank v. Campbell*, 34 Mo. App. 5; *Reed v. Bott*, 100 Mo. 62. (6) If the foregoing points are untenable, the laws and policy of the states of Illinois and Missouri are so different from the laws and policy of the state of Kansas as to render the general rule concerning international comity inapplicable to the case at bar, and the just rights of innocent purchasers should be protected. Statutes of Illinois as proved, Revised Statutes, 1889, sec. 5176; *Green v. Van Buskirk*, 7 Wall. 139; *Smith v. Hutchings*, 30 Mo. 380; Story on Conflict of Laws [8 Ed.] sec. 323, 327, *et seq; Corbett v. Littlefield*, 84 Mich. 30; *Harrison v. Sterry*, 5 Cranch, 249; *Boydson v. Goodrich*, 49 Mich. 66; *Montgomery v. Wright*, Mich. 133; *Gillilan v. Kendall*, 26 Neb. 22; *Frizzle v Rundell*, 88 Tenn. 396; *Obernathy v. Wheeler*, 17 S. W. Rep. (Ky.) 858; *Rogers v. Huie*, 2 Cal. 271; *Spooner v. Holmes*, 102 Mass. 523. (7) Plaintiff is not an innocent holder of the note and mortgage in controversy; but whether he is or not is immaterial for the point raised in this case. 37 Mo. App. 412.

BURGESS, J.—This is an action in trover and conversion for five hundred and seventy head of cattle. The plaintiff claims to have been the owner of the cattle as assignee of a mortgage executed in the state of Kansas on the cattle on the twenty-second day of October, 1890, by B. A. Webber and W. D. Wilson to G. A. Dunn to secure the payment of their note for $15,675 payable ten months after the date of the mortgage.

The law of Kansas in relation to chattel mortgages which was in force at the time of the execution of the mortgage under which plaintiff claimed the cattle is as follows:

"Section 9. Every mortgage or conveyance intended to operate as a mortgage of personal property which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged shall be absolutely void, * * * as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds in the county where the property shall then be situated; or, if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident.

"Section 10. Upon the receipt of any such instrument the register shall indorse on the back thereof the time of receiving it and shall file the same in his office, to be kept there for the inspection of all persons interested."

"Section 15. In the absence of stipulations to the contrary, the mortgagee of personal property shall have the legal title thereto and the right of possession."

A copy of the mortgage was prior to the thirtieth day of November, 1890, deposited in the office of the

register of deeds of Edwards county, Kansas, the place of residence of W. D. Wilson, and in the office of the register of deeds for Stafford county, the place of residence of B. A. Webber. The mortgage deed among other things provided that possession of the cattle was to remain with the mortgagors until default in payment of the debt or interest, or "in case of sale or disposition or attempt to sell or dispose of the same, or removal or attempt to remove the same" from certain counties in Kansas enumerated in the mortgage, when the mortgagee might take the property into his own possession. Before the maturity of the mortgage debt, the mortgagors, without the knowledge or consent of the mortgagee or his transferee, removed the cattle to the state of Illinois and sold them to respondents through commission men. It is conceded that respondents had no actual notice of the mortgage and paid value for the cattle, and that the mortgage deed was not recorded in the state of Illinois. The identity of the cattle is not disputed.

The answer is first a general denial, and then alleges that defendants were innocent purchasers for value, and contains other allegations, which so far as deemed material will be referred to in this opinion.

The court below sustained a demurrer to the evidence introduced by plaintiff, and directed a verdict for defendants on the grounds that the mortgage had not been recorded in or executed as required by the laws of Illinois, and that the defendants were innocent purchasers. After filing the usual motion for a new trial and the same being overruled, plaintiff prosecutes its appeal to this court.

This is a case where one of two innocent parties must suffer loss, as there seems to have been the utmost good faith throughout the entire transaction so far as the plaintiff and defendant themselves are concerned.

In fact there is no intimation by either party to the contrary. The defendants purchased the cattle in open market in the city of East St. Louis, Illinois, a large cattle market, where many are sold, and paid full value therefor. And if the old English doctrine in regard to markets overt was applicable in this case they would evidently be protected in their purchase, and could not be held liable in this action for the value of the cattle in controversy. This is so, even though the vendor, or person 'claiming to be the owner and in possession, was not in fact the owner. But it is said in the case of *Ventress v. Smith*, 10 Pet. 175, that the doctrine of markets overt which controls and interferes with the application of the common law has never been recognized in any of the United States, or received any judicial sanction. *Fawcett v. Osborn,* 32 Ill. 411. The general rule is that no man can acquire title to chattels from a person who has himself no title to them. *Wheelwright v. Depeyster*, 1 Johns. 478. The only exception being sales of cash and certain negotiable instruments. The purchaser must know that the person from whom he buys is the owner of the property.

At the time of the execution of the mortgage under which plaintiff claims the cattle; Dunn the mortgagee executed and delivered to Webber and Wilson a receipt as follows: "Received of B. A. Webber and W. D. Wilson one note of $15,675, secured by chattel mortgage on five hundred and seventy head of three and four year old steers, under the following conditions:

"Whereas, I have this day sold the above described property to said Webber and Wilson, and, whereas, there is now a chattel mortgage thereon given by G. A. Dunn & Co. to the Bank of Commerce of Kansas City, Mo., .for the sum of $15,000, which I agree to have released on or before the first day of November, 1890;

otherwise I agree to return the above mentioned note and mortgage to said Webber and Wilson, and the said sale is to be declared off without liability to either party.

    "(Signed)                  G. A. DUNN."

The conditions of this receipt were never complied with by Dunn nor was it ever recorded, and defendant's counsel contend that as it was the counterpart of the mortgage and was not recorded with it, that the recording of the mortgage without it was not a compliance with the registry act of Kansas, and was not notice. This receipt is not referred to in the mortgage, is not made part thereof, and it is somewhat difficult to see how it became a part thereof so as to entitle it to record as its counterpart. It seems to be a separate and independent paper. Not only this, but Webber and Wilson did not seek to avoid their contract of purchase of the cattle because the stipulation in the receipt had not been complied with by Dunn. On the contrary, they kept the cattle, and by their act in selling them through their agents to defendants affirmed the contract of sale, and defendants buying from them occupy no better position than they did unless they were innocent purchasers.

There is no question and there can be none as shown by the authorities cited by counsel that where a paper, contract or agreement is referred to in a mortgage, that all persons claiming under such mortgage where it has been duly recorded take with notice of the paper, contract or agreement referred to. *Munson v. Ensor*, 94 Mo. 504; *Brownlee v. Arnold*, 60 Mo. 79; *Lewis, Adm'r, v. Ins. Co.*, 3 Mo. App. 372; *Railroad v. Atkison*, 17 Mo. App. 484. Still it is not necessary for that reason that such paper or contract should be recorded. The law of Kansas only required the mortgage or copy thereof to be filed for record in the coun-

ties where the mortgagees, Webber and Wilson, resided at the time, which appears from the evidence to have been done. General Statutes, state of Kansas, art. 2, chap. 68.

The mortgage was duly executed and recorded in the state of Kansas, and all persons thereafter purchasing the cattle within the borders of that state were bound in law to take notice thereof, and the same rule by virtue of comity between the states applied to the cattle in the state of Illinois when they were shipped into that state. In the case of *Smith v. Hutchings*, 30 Mo. 380, where a slave on whom a mortgage had been duly executed and recorded in Kentucky where she then was and where the mortgagor resided, was afterwards brought to this state, where the mortgage was not recorded, and sold, the court held, that the mortgage being good where it was made it was good everywhere else on every principle of international comity, unless the policy of the state from which the property is brought, and where the controversy arises, should induce a different rule. In the case of *Feurt v. Rowell*, 62 Mo. 524, the court says, "The mortgage was recorded in the county in which the mortgagor resided, and imparted full notice to everyone, who was or might become interested. The removal of the property to another county did not destroy the lien. Had the property been removed out of the state, the mortgage would not thereby have been invalidated." In the case of *Bank v. Metcalf*, 29 Mo. App. 384, the Kansas City court of appeals held, that where a mortgage had been duly executed on some cattle in LaFayette county and recorded therein, and the cattle were thereafter shipped by the mortgagor to the defendants who were commission merchants in East St. Louis in the state of Illinois, and sold by them on commission, that they were liable to plaintiff as beneficiary in the mortgage

for the value of the cattle, and that defendants were to be treated the same as if they knew of the execution of the mortgagé, and that the mortgage being good as between the parties, and binding on all persons in the state where it was executed and recorded, was by the rule of comity valid and binding, and pursued the property outside of the state where the plaintiffs might have followed it with their mortgage. *Rice v. Brown*, 9 Cush. 309; *Bank v. Metcalf*, 40 Mo. App. 501. The same rule applies in Illinois where the cattle were sold. *Hinney v. Baldwin*, 16 Ill. 108; *Smith v. Whitaker*, 23 Ill. 369; *Mumford v. Canty*, 50 Ill. 371; *Roundtree v. Baker*, 52 Ill. 241; also in Kansas, *Ramsey v. Glenn*, 33 Kan. 271; *Brown v. Campbell*, 44 Kan. 237; *Handley v. Harris*, 29 Pac. Rep. (Kan.) 1145; *Bank v. Massey*, 30 Pac. Rep. (Kan.) 124.

The mortgage being good in Kansas is to be given the same force and effect everywhere else upon the principle of international comity, unless the policy of the state of Illinois where the property was taken and where the controversy arose should evidence a different rule. There is no substantial difference in the legal effect of a mortgage executed and recorded in the state of Kansas, according to the laws of that state, and a mortgage executed and recorded in the state of Illinois according to the laws of that state. There is some difference in the forms and certificates of acknowledgments, it is true, but that in no way affects the validity of the instruments, or the rights of parties holding under them.

It is argued that because the mortgage provided that the mortgagors, Webber & Wilson, were to remain in the possession of the cattle until forfeiture for failure to pay the debt when it became due, it gave them a badge or *indicia* of ownership, which permitted them to impose upon innocent purchasers, and that for that

reason defendants have the superior equity. This provision is expressly authorized by the law of the state where the contract was made, and also by the law of the state where the cattle were sold. It is difficult to see in what way a mortgage would benefit a debtor if at the very moment it was executed the mortgagees were by its provisions authorized to take possession of the mortgaged property. It would be better to deliver it at once to the creditor without the expense and trouble of executing the mortgage. The object of the mortgage is to give time to the debtor and to enable him to pay his demand by securing his creditor, otherwise it would be a useless instrument and not worth the paper upon which it is written. We do not wish to be understood as saying that the plaintiff has any superior equities over the defendants, but we do say that having complied with the law of the state in regard to such instruments where the mortgage has been executed and recorded, that by comity between the states the plaintiff holding under the mortgage has the superior legal right, and when defendants purchased the cattle it was their duty to see that the vendor was the owner and had right to sell the same. It is not opposed to the policy of the state of Illinois to enforce contracts made in another state when they are not based upon an immoral or criminal consideration. *Mumford v. Canty*, 50 Ill. 371.

At the time that this suit was brought the mortgage debt was not due, and it is claimed that for that reason this action was prematurely brought, and that no cause of action had then accrued to plaintiffs. The mortgage provides "that in case of a sale or disposal or attempt to sell or dispose of the property or a removal or attempt to remove the same from Stafford and Edwards counties, or any unreasonable depreciation in the value, or if from any other cause the security

shall become inadequate, or if at any time the party of the second part shall deem himself insecure, the said party of the second part may take such property or any part thereof into his possession." The possession at the time of the conversion was in the mortgagors. It is a well settled rule of law that the mortgagors under such circumstances have the title to the property; and having the possession, they have an interest they may sell, and may transfer the possession to the vendee, subject, of course, to the lien of the mortgage. Plaintiff relies for support of the action upon the provision of the mortgage which authorized the mortgagee to take possession of the property in case the mortgagors attempted to sell, dispose of or remove the cattle. This is an option which he may or may not exercise. Authorities of high character, including those cited by counsel for defendants, hold that until such option is exercised by the mortgagee and he either so takes or demands the possession, the possession remains with the mortgagor until default made in the payment of the debt, and that a sale made by him before such default or assertion of right will not support trover against the vendee or agent making the sale. *Bank v. Metcalf*, 29 Mo. App. 392; *Skiff v. Solace*, 23 Vt. 279; *Hathaway v. Brayman*, 42 N. Y. 325; *Hamill v. Gillespie*, 48 N. Y. 556; *Cadwell v. Pray*, 41 Mich. 307.

By the terms of the mortgage the mortgagee was secured the right to take possession of the property upon the contingency of its removal or sale before the maturity of the debt. Whenever then the property was removed and sold, it was a conversion and a right of action accrued to the mortgagee, and he was not obliged to wait until the note matured before bringing his suit. Whatever may be the rule in other jurisdictions, in this state the law seems to be as herein indi-

cated. *Bank v. Metcalf*, 29 Mo. App. 393; *Williams v. Wall*, 60 Mo. 321; *Koch v. Branch*, 44 Mo. 542.

No question as to want of demand before suit brought is made in this case, but even that was not necessary before bringing suit. *Bank v. Metcalf, supra.* The judgment is reversed and the cause remanded. All of this division concur.