[L. A. No. 9951. In Bank.—March 1, 1928.

MERCANTILE ACCEPTANCE COMPANY (a Corporation), Appellant, v. ALBERT L. FRANK, et al., Respondents.

484

Lewinson & Barnhill for Appellant.

L. G. Shelton, Charles L. Evans and Arthur Wright for Respondents.

CURTIS, J.—This is an appeal from a judgment in favor of the defendants after the sustaining of general demurrers to the complaint. In the complaint it is alleged that the plaintiff is the owner of a chattel mortgage upon a Stude-

baker automobile, to recover which the action was brought. This chattel mortgage was given by the defendant Frank to secure the balance due on the purchase price of said automobile. This defendant was not served with process and has not appeared in the action. The automobile was purchased by Frank in the city of Minneapolis, county of Hennepin, state of Minnesota, from the assignor of the plaintiff. The chattel mortgage was executed and filed for record in the state of Minnesota, as provided by the laws of said state. Thereafter, without the knowledge or consent of the plaintiff, Frank drove the automobile to California, where he sold it to the other defendants without any actual notice or knowledge on their part of plaintiff's chattel mortgage. While the mortgage was executed in accordance with the laws of Minnesota, it was not accompanied by the affidavit required in this state by subdivision 1 of section 2957 of the Civil Code. Neither was it recorded in this state prior to the sale of the automobile by Frank to the other defendants herein.

It is a well-recognized principle of law in this state, as well as other jurisdictions, that the law of the place where a contract is made determines its validity. This rule is well and succinctly stated, as follows: ''The validity and construction of a contract are determined by the law of the place where it is made. Accordingly, it is quite generally held that a contract valid in the place where made is valid everywhere; and that a contract invalid where made is invalid everywhere; and the validity or invalidity of a contract so determined will, on principles of comity, be recognized wherever it is sought to be enforced, even though the law of the forum would have determined otherwise if applied.'' (5 Cal. Jur. 449.) To the same effect is 11 Corpus Juris, page 422. (See, also, *Fenton* v. *Edwards & Johnson,* 126 Cal. 43 [77 Am. St. Rep. 141, 46 L. R. A. 832, 58 Pac. 320]; *Platner* v. *Vincent,* 187 Cal. 443 [202 Pac. 655]; *Pinney* v. *Nelson,* 183 U. S. 144 [46 L. Ed. 125, 22 Sup. Ct. Rep. 52]; *Hervey* v. *Rhode Island Locomotive Works,* 93 U. S. 664 [23 L. Ed. 1003, see, also, Rose's U. S. Notes]; Thomas on Chattel Mortgages, 320; Jones on Chattel Mortgages, 301.)

There are certain exceptions to this rule, but none of these exceptions need be mentioned here, as they do not apply to or affect any question in the present action. There-

fore, the chattel mortgage of plaintiff upon the Studebaker automobile in controversy, even though it was not executed with formalities nor accompanied by the affidavit of good faith, required by the statute of this state, was, nevertheless, a valid and legal instrument, not only in the state where executed, but in this or any other state into which the automobile might thereafter be brought.

The question whether the lien of such a mortgage executed in another state against the encumbered property is lost on the property being brought into this state has never been the subject of any decision of this court. In the case of *Motor Investment Co.* v. *Breslauer,* 64 Cal. App. 230 [221 Pac. 700], the district court of appeal held that the lien was not lost, but still subsisted after the property had been brought within this state, but in that action the mortgagee had learned of the location of the personal property, which also happened to be an automobile, and on learning that fact recorded its mortgage in the county where the property was being kept before a subsequent encumbrancer had advanced to the owner money on said machine and had taken a chattel mortgage thereon to secure the payment of the amount advanced. The chattel mortgage in that case was executed in the state of Oregon and in accordance with its laws and was not accompanied by the affidavit of good faith required by our statute.

The precise question in the present action was before the United States circuit court of appeals in the case of *Shapard* v. *Hynes,* 104 Fed. 449 [52 L. R. A. 675]. In that case the circuit court held as follows:

"There has been much discussion concerning the effect of the removal of mortgaged goods and chattels from the state where the mortgage was made and recorded, to another state. The general consensus of judicial opinion seems to be that when personal property, which at the time is situated in a given state, is there mortgaged by the owner, and the mortgage is duly executed and recorded in the mode required by the local law, so as to create a valid lien, the lien remains good and effectual, although the property is removed to another state, either with or without the consent of the mortgagee, and although the mortgage is not re-recorded in the state to which the removal is made. The mortgage lien is given effect, however, in the state to which

the property is removed, solely by virtue of the doctrine
of comity. Hence a state may by appropriate legislation
decline to observe the rule of comity, and may require all
mortgages affecting personal property which is situated
therein or brought therein to be there recorded, as a condi-
tion precedent to the recognition of their validity in that
state. But the statutes of a state which prescribe how mort-
gages on personal property shall be executed and recorded
are generally, if not universally, regarded as speaking with
respect to mortgages made within the state upon property
there situated, and as having no reference to personalty
brought within the state which is at the time encumbered
with a valid lien created elsewhere. These propositions are
fully sustained by the following authorities: *Hornthal* v.
*Burwell*, 109 N. C. 10 [26 Am. St. Rep. 556, 13 L. R. A.
740, 13 S. E. 721]; *Smith* v. *McLean*, 24 Iowa, 322, 328,
329; *Handley* v. *Harris*, 48 Kan. 606 [30 Am. St. Rep. 322,
17 L. R. A. 703, 29 Pac. 1145]; *Bank* v. *Morris*, 114 Mo. 255
[35 Am. St. Rep. 754, 19 L. R. A. 463, 21 S. W. 511];
*Kanaga* v. *Taylor*, 7 Ohio St. 134 [70 Am. Dec. 62]; *Lang-
worthy* v. *Little*, 12 Cush. (Mass.) 109; *Whitney* v. *Hey-
wood*, 6 Cush. (Mass.) 82; *Ames Iron Works* v. *Warren*,
76 Ind. 52 [40 Am. Rep. 258]; *Feurt* v. *Rowell*, 62 Mo. 524,
526; *Cool* v. *Roche*, 20 Neb. 550, 556 [31 N. W. 367];
*Keenan* v. *Stimson*, 32 Minn. 377 [20 N. W. 364]; *Offutt* v.
*Flagg*, 10 N. H. 46; *Lathe* v. *Schoff*, 60 N. H. 34; *Barrows*
v. *Turner*, 50 Me. 127; *Hall* v. *Pillow*, 31 Ark. 32; *Mumford*
v. *Canty*, 50 Ill. 370 [99 Am. Dec. 525]; *Ballard* v. *Winter*,
39 Conn. 179; 12 Am. Law Reg. (N. S.) 759; Jones, Chat.
Mortg. (4th ed.), sec. 260.''

That this is the generally accepted rule is declared in
Corpus Juris, volume 11, page 424, in the following lan-
guage: ''The great weight of authority is to the effect
that a chattel mortgage, properly executed and recorded
according to the law of the place where the mortgage is
executed and the property is located, will, if valid there,
be held valid even as against creditors and purchasers in
good faith in another state to which the property is removed
by the mortgagor, unless there is some statute in that state
to the contrary, or unless the transaction contravenes the
settled law of policy of the forum. In some jurisdictions this
is held to be the rule without regard to the presence or ab-

sence or consent or knowledge on the part of the mortgagee as to the removal, but by the better authority it seems that, where the mortgagee has consented to the removal of the property, he will forfeit his right to a lien unless he takes such steps as are required for its protection by the statutes of the state into which the property is removed. The recognition and enforcement of a lien of a mortgage executed in a foreign state is, however, a matter resting purely in comity; hence a state may by appropriate legislation decline to observe the rule of comity, and may require all mortgages affecting personal property which is situated therein or brought therein to be there recorded, as a condition precedent to the recognition of their validity in that state, and, although the requirement that an instrument conveying or affecting movable chattels shall be recorded in the place where the property is situated may not be in strict harmony with the common-law doctrine that the disposition of movables is to be governed by the law of the domicile of the owner, it is certainly competent for a state to adopt a modification of this kind to the disposition of any property within its territorial limits."

There are only four states which do not recognize this doctrine, and which refuse to uphold the right of foreign mortgagees against the claims of innocent purchasers or attaching creditors. These states are Michigan, Louisiana, Pennsylvania, and Texas. However, a chattel mortgage is not recognized in any form in Louisiana, no matter whether made without or within said state (*Delop & Co.* v. *Windsor & Randolph*, 26 La. Ann. 185). In Pennsylvania, a chattel mortgage is not recognized unless accompanied by a delivery to the mortgagee of the mortgaged property. In some states the question is regulated by statutes (11 Cor. Jur. 426). In California we have no statute providing for the recording of a chattel mortgage executed out of the state on property thereafter brought into the state. ▮ Section 2959 of the Civil Code of this state providing for the recordation of chattel mortgages has reference in our opinion only to domestic chattel mortgages or chattel mortgages executed on personal property in this state at the date of its execution (*Shapard* v. *Hynes, supra; Motor Investment Co.* v. *Breslauer, supra*).

As we have no express statute upon the subject and as the great weight of authority is to the effect that a valid lien by chattel mortgage is not lost by the removal of the mortgaged property into a different state than that in which the property was located when mortgaged, we are of the opinion that we should follow the rule which has met almost the unanimous approval of the highest courts of this country. In doing so we are not accepting this rule simply because it has been sanctioned by the greater number of the courts of our land, but also for the reason that it appeals to us to be more just and fair than the contrary rule. The reason of this rule has been well expressed by Mr. Justice Hart in *Motor Investment Co.* v. *Breslauer, supra,* in the following apt and concise language: "The rule, however, appears to be founded upon the principles of equity and natural justice. As applied to cases of the character of the one before us, it can produce no harsh or unjust results. The principle underlying it may be analogized to that which the owner of property stolen from him and taken or transported to another state may follow the thief into the latter state and reclaim or take possession of the pilfered goods or chattels wherever found. A state may, it is true, refuse to recognize the rule of comity in such cases, but should it do so, it would become a party to every such fraudulent transaction. It is not going too far to say and to hold that it is preferable and more desirable that an innocent purchaser or encumbrancer of personal property brought into a state under such circumstances as those characterizing the transaction with which we are here concerned should suffer loss, which possibly his own improvidence or want of diligence has brought to him, than that the state should assume and maintain an attitude towards such transaction which would necessarily stigmatize it as an accessory after the fact to the fraud inhering therein."

In the case of *Bonin* v. *Robertson,* 2 Ter. Law Rep. (Can.) 21, which was a case precisely like the present action, the court said: "If a thief brings property stolen in Minnesota into this country he surely cannot take advantage of our laws to enable him to turn his stolen property into cash by passing, to even an innocent purchaser, a title which he has not, and so defeat the title of the original owner. For a mortgagor, in defiance of a solemn agreement entered into

by him that he will not remove property or dispose of it in fraud of the mortgage, to remove and (as far as he can) dispose of that property, may not yet in this country bring him in conflict with our criminal laws, but is he not morally just as much a thief as the more vulgar criminal who furtively deprives his neighbor of his property?''

We might add that according to the laws of this state, the mortgagor, Frank, in removing the automobile from the county in which it was at the date of the mortgage and driving it into another state and selling it without notifying the mortgagee was guilty of larceny to the same extent that he would have been had he actually stolen the machine from its rightful owner (Pen. Code, sec. 538). Nothing being shown to the contrary, we must presume that the law of Minnesota upon this subject is the same as that of our own state. The opinion in *Bonin* v. *Robertson, supra,* continues as follows: ''Are we then to help him to convert this property so as to complete his attempt to deprive the mortgagee of his rights by selling it to a purchaser here—innocent or otherwise? I humbly submit not. If the contention of the plaintiff here were to prevail, that once chattels come across our boundary it is only a question of speed between the mortgagee in his pursuit after the fly-by-night mortgagor and this usually alert individual in finding an innocent purchaser obligingly ready to purchase without too much enquiry or too many troublesome questions, the property he has brought with him in his flight.''

It is claimed, however, by respondents that by the adoption of this rule adequate protection to the citizens of this state will not be afforded, and that such rule is in conflict with another well-established rule that a state will not give effect to the laws of another on the principle of comity when the effect would be injurious to the state or its citizens (12 Cor. Jur. 1401; *Hill* v. *Spear,* 50 N. H. 253 [9 Am. Rep. 205]). In passing upon the question as to whether the rule contended for by the appellant adequately protects the rights of the citizens of our own state, we must consider this rule in all of its aspects. While the adoption of such a rule places upon the citizens of this state the duty of exercising a reasonable degree of care and diligence in purchasing property recently brought into the state, it also affords protection to our own citizens and secures them against the unlawful

and criminal acts of mortgagors of personal property situated in this state. There are in this state, as there are in probably every other state in this country, vast sums of money loaned upon personal property, a large part of which is secured by chattel mortgages upon automobiles. To accept the rule for which respondents contend would be to jeopardize this large investment of capital by the citizens of our state in this class of securities. It would say to them, "Your security is valid so long as the property remains within this state, but the moment the mortgagor drives it over the state line your security is lost, and if the property is sold to a purchaser who has no knowledge of your lien, his title thereto is superior to any right you may have in said property." It is true, the mortgagor in removing the property from the state and selling it has committed larceny and if apprehended may be prosecuted and punished for his crime, but this does not restore to the owner his lost property. When we look at this aspect of the question the rule contended for by the appellant seems fair and just and we think completely answers the objection thereto raised by the respondents that its adoption and operation would injuriously affect our own citizens. As we view the question its result would be to the great and lasting benefit and advantage of the citizens of our own state. There may be instances in which it would work a hardship upon the citizens of this state, but, as intimated by Judge Hart, their loss in most cases is the result of their "own improvidence or want of diligence." Their loss in our opinion would be but slight compared with that which might ensue to that larger body of our citizens who in good faith have invested their capital in chattel mortgages upon various kinds of personal property, and particularly upon motor vehicles.

In Texas, as we have seen, the courts do not recognize the lien of a chattel mortgage executed upon property situated without the state, when such property is brought within that state. The rule in that state goes further and is applied to conditional sales of personal property as well as chattel mortgages. Therefore, personal property in this state, for instance, an automobile bought under a conditional sales contract and by the purchaser taken into the state of Texas, without the knowledge or consent of the owner and for the express purpose of defrauding the owner of his rights

therein, becomes free of all the conditions of said contract, and said purchaser may sell the same and give an absolutely good title thereto. Referring to the law of Texas upon this subject, Mr. Joseph H. Beale, in a recent article in the Harvard Law Review, says: "The operation of the Texas doctrine illustrates its inconvenience. It appears to be a regular course of business for a swindler to buy a motor car on credit in California or elsewhere, drive it into Texas, and sell or pledge it there. The original seller is helpless in the face of this practice; and Texas will doubtless continue full of willing *bona fide* buyers. That this result is most unfortunate from the point of view of commercial practice is clear." (Vol. XL, No. 6, Harvard Law Review.) It seems to us that the safer and saner rule, and that which is most in accord with our ideas of justice and fair dealing as well as with the best business methods, both as to chattel mortgages and conditional sales contracts, is that which, as we have already seen, is approved by the great weight of authority, and which provides that the law of a state, into which chattels have been surreptitiously removed against the will and without the knowledge or consent of the owner, or person having a lien thereon, will not apply to divest the title of the absent owner in one instance or impair the rights of the lienholder thereof in the other. There may be cases in which the owner of a chattel mortgage has not acted with due diligence in following and reclaiming the property which is the subject of his mortgage, or he may be estopped on account of his acts and conduct in reference to the mortgaged chattels from recovering them after their purchase by persons having no knowledge of the mortgage lien, but the complaint in this case shows no facts which would indicate that plaintiff's rights are subject to either of these defenses. The complaint in our opinion states a cause of action, and the demurrers thereto should have been overruled.

Judgment reversed.

Preston, J., Richards, J., Shenk, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.