## No. 12,438.

MOSKO ET AL. *v.* MATTHEWS.
(284 Pac. 1021)

Decided February 3, 1930.

Mr. MAHLON LEE HARKER, for plaintiffs in error.

Mr. CHARLES R. ENOS, Mr. HAROLD H. HEALY, Mr. THEODORE A. CHISHOLM, for defendant in error.

*In Department.*

MR. JUSTICE ADAMS delivered the opinion of the court.

MATTHEWS brought an action in conversion against Mosko et al., to recover the value of an automobile, claimed by plaintiff under a foreign chattel mortgage. The judgment was for plaintiff, and defendants bring the case here on writ of error and apply for a supersedeas.

The facts that led up to the present action are as follows: One Byers bought the automobile in Enid, Garfield county, Oklahoma. He paid part of the purchase price, gave his negotiable promissory note for the balance due, and, in order to secure payment thereof, then and there executed a chattel mortgage on the automobile in favor of L. E. Elliott, payee of the note. A few days thereafter, Elliott assigned the paper to plaintiff, who

now claims the rights of the original mortgagee. This chattel mortgage was executed and promptly filed in the office of the county clerk and register of deeds of Garfield county, Oklahoma, by depositing the same in such office, in accordance with the laws of that state. The mortgage provides expressly, among other things, that, if the mortgagor shall remove or attempt to remove the automobile from said county, the mortgagee or his assigns may take said property into his possession and sell it to satisfy the debt.

After the note and mortgage were given, and after the mortgage was so filed in Oklahoma, and while it was alive, Byers, unmindful of his contractual obligations and the laws of that state, drove the car to Colorado. He removed from Oklahoma and sold it here without plaintiff's knowledge or consent, and without payment of the balance due, secured by the mortgage. Shortly thereafter, plaintiff discovered that Byers had absconded with the car, and employed a detective to find it. It was finally located in possession of defendants in this state. Plaintiff demanded possession, which demand defendants refused, hence this action for the value of the chattel, in which plaintiff prevailed.

Defendants claim as innocent purchasers for value, without notice or knowledge of the Oklahoma mortgage. There is no evidence that defendants had actual notice thereof, but plaintiff contends that the lien of such mortgage is superior to the claim of the Colorado purchasers and subsequent encumbrances. The facts are undisputed, and issue is joined on this question of law.

1. A frequently quoted statement of the general rule here applicable is found in 11 C. J., p. 424, §33, which reads in part as follows: "The great weight of authority is to the effect that a chattel mortgage, properly executed and recorded according to the law of the place where the mortgage is executed and the property is located, will, if valid there, be held valid even as against creditors and purchasers in good faith in another state to which

the property is removed by the mortgagor, unless there is some statute in that state to the contrary, or unless the transaction contravenes the settled law or policy of the forum.''

*Mercantile Acceptance Co. v. Frank,* 203 Cal. 483, 265 Pac. 190, 57 A. L. R. 696, involved a mortgage made in Minnesota which covered an automobile thereafter surreptitiously removed to California, where it was sold to parties who had no actual notice of the Minnesota mortgage. The mortgage was sustained, and the opinion points out that there are only four states that do not recognize the rule above stated. To same effect, see 11 C. J. 426. This rule appears to be followed in the other 44 states, even in the absence of a uniform chattel mortgage law throughout the nation.

■ 2. Counsel for defendants call our attention to the fact that the mortgage made and filed in Oklahoma was not acknowledged, but it was signed in the presence of two witnesses, and, under the laws of that state (§7655, Comp. Stats. Okl. 1921), this entitled the instrument to a place in their public records, the same as if acknowledged. The validity of the mortgage is to be determined by the law of the place where it was made at the time the chattel was there located. *National Live Stock Co. v. First National Bank,* 203 U. S. 296, 27 Sup. Ct. 79, 51 L. Ed. 192; *Mercantile Acceptance Co. v. Frank, supra; Alferitz v. Ingalls,* 83 Fed. 964, 970; *Shapard v. Hynes,* 104 Fed. 449, 453, 52 L. R. A. 675; 11 C. J., p. 422, §31; 5 R. C. L. p. 398, §20. And the law of the forum governs the remedy. 5 R. C. L. p. 398, §20.

■ 3. The written instrument must be akin to some law, but it is obvious that if the law of the place where made should not govern in the construction of its validity, then, when such paper finds its way from home into other states, it would be but a wandering outlaw and maverick, because destitute of any recognized legal parentage. The rule that it must be so governed as to entitle it to enforcement in other jurisdictions, is based

on comity, and to refuse its recognition would be to deny the comity rule. A state may by appropriate legislation decline to observe it (*Shapard v. Hynes, supra,* at page 453), but our general assembly has never adopted such restrictive measures.

█ 4. We have heretofore given effect to the extra-territorial force of an automobile mortgage recorded in another state. *Flora v. Julesburg Motor Co.,* 69 Colo. 238, 193 Pac. 545. But even under the general rule above quoted from 11 C. J. 424, §33, the deference we pay to the laws of sister states does not involve the surrender of our own sovereignty. The foreign law will not be enforced if contrary to the settled public policy of Colorado, or if detrimental to the interests of our citizens. We so held in *Turnbull v. Cole,* 70 Colo. 364, 201 Pac. 887, 25 A. L. R. 1149, which involved the question of a secret lien as against a third party without notice or knowledge thereof. Irrespective of state lines, and with no favoritism shown toward the citizens of this state or any other, we have held that the secret character of that class of paper puts it beyond the pale of the law, because it is against our public policy and contrary to the express provisions of our Statute of Frauds and Perjuries (§5113, C. L. 1921, §2027, Mills Ann. Stats. [old Ed.]). *Coors v. Regan,* 44 Colo. 126, 132, 96 Pac. 966, cited in *Turnbull v. Cole, supra.* That situation is readily distinguishable from the case at bar, for there is no such element present, to classify it as an exception to the general rule quoted, or to create disparagement against the supremacy of the Oklahoma chattel mortgage.

█ 5. We are far from impressed with any idea that the employment of the rule of comity in a proper case is inimical to the interests of our own citizens. It is conducive to mutual good will between states, necessary to law enforcement, and promotive of like respect exercised between states that observe such neighborly amenities. It implies mutuality and reciprocity (*Union Securities Co. v. Adams,* 33 Wyo. 45, 236 Pac. 513, 50 A.

L. R. 23, referred to in extended note in 57 A. L. R. at p. 718), but it is none the less effective or lacking in persuasion because of its native origin in a spirit of camaraderie. If viewed selfishly, from the standpoint of one state alone, it should give serious pause before the rule be rejected. If disregarded, it may possibly be provocative of retaliation, and narrow the effect of chattel mortgages executed in Colorado to our own boundary lines, to the great detriment of our merchants who may be victims of mortgagors afflicted with a wanderlust and penchant for contempt of legal restraint, like this Mr. Byers, of unstable mind, late of Oklahoma. Would such a judicial system be helpful to our citizens, or Colorado securities? The defendant Mosko himself, who is a local automobile dealer, might be one of the first to suffer under such procedure. On the other hand, the almost universal application of the rule of comity, followed in our sister states, is such that our observance of it may readily stimulate reciprocity, and thereby automatically extend the territorial force of Colorado chattel mortgages no less than forty fold. Certainly, this attractive premium on comity is in negation of any possible belief that it is a one sided affair, or that its observance is detrimental to the interests of the citizens of a state where the rule is followed.

In one state, at least, a court saw fit to withhold the application of such rule, and declined to extend the courtesy to another state, on the ground that none was granted in return. *Union Securities Co. v. Adams, supra.* We do not, however, base our decision on any apprehension in this regard, nor in fear of reprisals. It is founded on honesty and fair dealing, and is consonant with good business methods. *Mercantile Acceptance Co. v. Frank, supra,* at page 492. The rule was followed long before the days of automobiles. *Greenville National Bank v. Evans-Snyder-Buel Co.,* 9 Okl. 353, 60 Pac. 249; *Smith v. McLean,* 24 Ia. 322. (See also note on foreign mortgages, in Wells on Replevin [2d Ed.], p. 190.) Since

then, the advent of good roads, improved means of travel, and obliteration of imaginary barriers, with consequent promotion of cordial relations between states, have cemented state ties, accelerated the comity rule and given it almost universal scope, with inestimable resultant benefits to all. It is not inconsistent with the established public policy of this state, and the interests of trade and commerce, as well as the welfare of citizens, forbid a backward step or provincial interpretation that may estrange our citizens from so powerful a league.

■ 6. The state of Oklahoma, where the mortgage in question was made, and where the automobile was situated at that time, is one of the commonwealths that enforce the rule of comity with respect to foreign chattel mortgages. *Greenville National Bank v. Evans-Snyder-Buel Co., supra.* In that jurisdiction, a validly executed chattel mortgage creates a lien on the mortgaged property. *Smith-Wogan Hardware & Implement Co. v. Bice,* 34 Okl. 294, 125 Pac. 456, Ann. Cas. 1914C, 274. And there, the unauthorized removal of mortgaged chattels is a felony. §2215, Comp. Stats. Okl. 1921; *Price v. State,* 5 Okl. Cr. 668, 115 Pac. 1132.

Manifestly, the clandestine removal by the mortgagor of a mortgaged chattel, by fleeing to another state in an automobile covered by such lien, without the knowledge or consent of the mortgagee or his assignee, is such conduct that made strict compliance on the part of the latter with the laws of any state an impossibility, and it was so in the present instance. Plaintiff exercised diligence; he employed a detective to find the car; it was traced to Colorado, where the mortgagor had unlawfully sold it; the mortgage was alive when the car was wrongfully removed, and the lien was not destroyed by such unlawful acts. If a man steals a watch, or automobile, or other chattel, it is not to be supposed that mere political boundary lines between states transform a crime into a virtue. The same principle is applicable to the felonious removal of a chattel impressed with a mortgage lien. In

*Mercantile Acceptance Co. v. Frank, supra,* the California court had under consideration the continuity of such liens for the first time, and, with ample precedent, employed strong language against the effort to stigmatize the state as an "accessory after the fact to a fraud." It is well said on page 491 of that opinion, that "Their [the purchasers'] loss in our opinion would be but slight compared with that which might ensue to that larger body of our citizens who in good faith have invested their capital in chattel mortgages upon various kinds of personal property, and particularly upon motor vehicles." This statement is the more appropriate in view of the fact that the automobile industry is one of the largest in the world, and the opportunities for fraud second to none. Without the assistance of legitimate mortgages undoubtedly millions who now ride would be compelled to walk, or be relegated to more primitive means of travel, and the well recognized business of taking mortgages should not be lightly impaired or destroyed.

7. The only remaining questions of consequence relate to pleading and proof of statutes of other states. Defendants' objections that such laws were not pleaded are out of order, as they were in fact pleaded. The complaint avers that the chattel mortgage was executed and delivered in accordance with the laws of the state of Oklahoma. While this allegation was informal and indefinite, it apprised defendants and the court of the fact on which plaintiff relied, and was allowable in the absence of a motion to make more specific (25 R. C. L. p. 949; *Schluter v. Bowery Savings Bank,* 117 N. Y. 125, 22 N. E. 572, 15 A. S. R. 494, 5 L. R. A. 541), or was unobjectionable unless taken advantage of under the seventh ground of demurrer, section 56, 1921 Code, that the pleading is ambiguous, unintelligible and uncertain. See also *Consolidated Tank Line Co. v. Collier,* 148 Ill. 259, 267, 35 N. E. 756, 39 A. S. R. 181. The old rule requiring proof of foreign statutes has been interpreted liberally, and some authorities are disposed to dispense

with it entirely, as useless and archaic, in view of the present accessibility of statutes of other states (*Hammond Motor Co. v. Warren,* 113 Kans. 44, 46, 213 Pac. 810), although it has not been wholly cast aside in this and other states.

8. As to proof of the laws of other states, section 396, 1921 Code reads: "Printed copies in volumes, of statutes, codes or other written law, of any territory or any other state or foreign government purporting or proven to have been published by the authority thereof, or proved to be commonly admitted as evidence of the existing law in the courts and judicial tribunals of such state, territory or governments, shall be admitted by courts and officers of this state on all occasions as presumptive evidence of such laws."

Plaintiff proved his compliance with the Oklahoma laws by the testimony of an Oklahoma attorney, duly licensed and admitted to practice and practicing there for many years, with long experience in automobile chattel mortgages. His testimony was uncontradicted. This manner of proof has a strong advocate in Dean Wigmore on Evidence, vol. 2, at section 1271. Our Code does not prescribe an exclusive method of such proof, at least in the absence of seasonable objection. Depositions of three Oklahoma witnesses, including that of the Oklahoma attorney, covering the chief features of plaintiff's case, were offered and read in evidence without objection, after which defendants' counsel made an omnibus motion to strike the testimony of the three witnesses, on the ground that such testimony was irrelevant, incompetent and immaterial, and that the Oklahoma laws were not proven. Most, if not all, of such evidence was decidedly pertinent. If any of it was good, the motion was bad. A motion may be stretched over such a wide expanse as to defeat its own object and dwindle into nothingness. It was rightly disregarded. We do not hold ourselves strictly concluded by the Oklahoma attorney's statements, but they are corroborated by Okla-

64

homa decisions and statutes; there is no evidence to the contrary, and a reversal for lack of more highly technical proof of matters that are obvious would accomplish nothing, for the result would be the same and it would make useless expense.

Judgment affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE MOORE and MR. JUSTICE ALTER concur.