Matter of the Bankruptcy of Vincent Halls **DUNCAN** and Roberta Jeanne Duncan, a marital community, dba V. H. Duncan Co., Bankrupt.

**Orval D. MARKS, Appellant,**

v.

**J. E. PINKHAM, Trustee in Bankruptcy, Hon. O. M. Pitzen, Referee in Bankruptcy, Appellees.**

**No. 16090.**

United States Court of Appeals
Ninth Circuit.
March 6, 1959.

**462**

Frank L. Whitaker, Portland, Or., for appellant.

Frank L. Cathersal, Tacoma, Wash., for appellee (trustee).

Burmeister & Stouffer, Tacoma, Wash., for appellee (bankrupt).

Before STEPHENS, Chief Circuit Judge, and HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

The referee in bankruptcy declared invalid as against the trustee in bankruptcy, appellee herein, chattel mortgage executed by bankrupt in favor of appellant herein. The district court confirmed the action of the referee, and the appellant, mortgagee herein, seeks reversal of the district court order.

The following facts are not in dispute. On September 17, 1955, appellant, a resident of Multnomah County, Oregon, owned a truck and trailer physically lo-cated in said county, the certificates of title to which were registered in said State, showing appellant as the registered and legal owner. Said equipment bore license plates issued by the State of Oregon.

On or about the above date, Carl Duncan and the bankrupt, Vincent H. Duncan, purchased said equipment from appellant at Portland, Oregon. Carl Duncan was a resident of the State of Oregon, and bankrupt was a resident of the State of Washington, residing in the City of Tacoma. As security for the unpaid balance of the purchase price, which was evidenced by joint promissory note of purchasers, the Duncans executed and delivered to appellant a chattel mortgage on said equipment, which mortgage was duly recorded in the County of Multnomah. The certificates of title were registered with the State of Oregon, showing appellant as legal owner and Duncans as registered owners. Shortly after the purchase the Duncans leased said equipment to Pacific Truck Rental Company, whose headquarters were in Portland, Oregon. The rental company, in turn, rented to others said equipment on a trip rental basis for use in interstate commerce between Oregon, California and Washington. On completion of trips the equipment would be returned to Oregon from whence another trip would originate. From the date of leasing to the rental company to the month of January 1956, Carl Duncan would generally operate the equipment under arrangements made by him with the renter of the equipment from the rental company. Carl Duncan's services proved to be unsatisfactory to Vincent H. Duncan and the rental company, and in January 1956, Carl Duncan endorsed the certificates of title to the equipment, and new registration certificates were issued by the State of Oregon, showing appellant as legal owner and bankrupt Vincent H. Duncan as registered owner. Vincent Duncan cancelled the lease arrangement with Pacific Truck Rental Company, and those parties entered into a new lease, which continued until Sep-

tember 30, 1956, when the new lease was cancelled by mutual consent. The pattern of use of equipment in interstate commerce under the new lease was substantially the same as under the former lease except persons other than Carl Duncan drove the equipment. After the cancellation of the new lease with the rental company and until the filing of the petition in bankruptcy in September 1957, the bankrupt trip-leased the equipment himself for interstate use in and out of Oregon to California, Washington and Canada in about the same pattern as before, except the bankrupt occasionally drove the equipment, and on completion of trips and when not in use the equipment was parked at the home of the bankrupt in Tacoma, Washington.

Certificates of registration of the equipment were never filed in the State of Washington, nor was the chattel mortgage ever filed or recorded there.

After the adjudication in bankruptcy the trustee, appellee, took possession of the equipment, which was then located in Tacoma, Washington. The appellant filed a petition before the referee in bankruptcy in reclamation to recover the equipment. The referee denied the petition, holding that the lien of the chattel mortgage was ineffective as to the trustee and that title to the equipment was vested in the trustee free from said lien. On petition for review of said order to the district court, the district court confirmed the order of the referee.

There is no dispute on this appeal as to the original validity of the chattel mortgage. The parties concede the chattel mortgage was executed and recorded in conformity with the laws of the State of Oregon. The overwhelming weight of authority is that the validity of a chattel mortgage as a lien on personal property is governed by the law of the state where the property is located at the time the mortgage is executed and recorded. This principle of law prevails in the State of Washington. The last expression on this subject by the Supreme Court of Washington appears in the recent case of Isaacs v. Mack Motor Truck Corporation, 50 Wash. 2d 325, 326, 311 P.2d 663, 665. In that case the purchaser of a truck located in Oregon executed a chattel mortgage in favor of the seller to secure the payment of the unpaid purchase price. The mortgage was executed and recorded in Oregon in accordance with the requirements of Oregon law. The mortgage did not contain an affidavit of good faith required by the laws of the State of Washington. Such affidavit was not required under the laws of the State of Oregon. The truck was later brought into the State of Washington, where it was attached by a creditor of the mortgagor for accounts rendered to the mortgagor in the State of Washington after the truck had been brought to that State. The trial court held the chattel mortgage invalid because of absence of the affidavit of good faith and lack of actual notice by the attaching creditor of the mortgage. The Supreme Court of Washington held the mortgage was valid in Oregon and was valid in Washington. On this point the court stated:

"We, of course, are here concerned with the validity of a chattel mortgage executed in a neighboring state, on property located there. The general rule is succinctly stated in 10 Am.Jur. 728, Chattel Mortgages, § 19:

" 'As in the case of contracts generally, the validity of a chattel mortgage is determined by the law of the place where it was made if the property was located there at the time of its execution, while the law of the forum governs the remedy. Thus, a chattel mortgage valid where made is a valid and legal instrument in another state, even though it is not executed with the formalities or accompanied by the affidavit of good faith required by the statutes of the latter state. The law of place where an acknowledgment of a mortgage is taken has been held to control in determining its sufficiency.' See Mercantile Acceptance Co.

v. Frank, 203 Cal. 483, 265 P. 190; also Annotation 57 A.L.R. 702."

In order to properly consider the contentions of the parties, we will summarize certain provisions of the Revised Code of Washington which may bear on the solution of the problem presented.

Section 46.12.010 provides that it shall be unlawful for any person to operate any vehicle in the State under a certificate of license registration of the state without securing and having in full force and effect a certificate of ownership therefore. Section 46.12.020 provides that no vehicle license number plates or certificate of license registration shall be issued unless the applicant at the same time makes satisfactory application for a certificate of ownership. Section 46.12.030 provides that the application for certificate of ownership shall contain a full description of the vehicle, a statement of the nature and character of applicant's ownership, and the character of any and all encumbrances other than statutory liens upon the vehicle. Section 46.12.050 provides that the certificate of ownership shall contain the name and address of the registered owner and of the legal owner.

Section 46.16.010 provides that it shall be unlawful for a person to operate any vehicle along the public highways of the state without having a current vehicle license and display vehicle license number plates. This section exempts farm implements used exclusively to transport farm implements from one farm to another. Section 46.16.030 provides that the provision relative to the licensing of vehicles and the display of license number plates and license registration certificates shall not apply to any vehicles owned by non-residents of the State if the owner has complied with the law requiring the licensing of vehicles in the State of his residence. This section applies only to the extent that under the laws of the state of his residence like exemptions are granted to vehicles licensed under the laws of Washington. Section 46.16.160 provides that any commercial vehicle bearing valid license plates of another State and not registered in Washington and which, under reciprocal relations with other States, would be required to obtain a motor vehicle license in Washington may in lieu of a certificate of ownership and license registration be issued a permit. This permit is valid for the conduct of interstate operations only.

Section 61.04.010 provides that mortgages may be made upon all kinds of personal property. Section 61.04.020 provides that a mortgage of personal property is void as against all creditors of the mortgagor both existing and subsequent and against all subsequent purchasers and mortgagees for value and in good faith unless it is accompanied by an affidavit of the mortgagor that it is made in good faith and without any design to hinder, delay or defraud creditors, and unless it is acknowledged and filed within ten days from the date of the execution thereof in the office of the county auditor of the county in which the mortgaged property is situated. The section further provides that any chattel mortgage executed as required, or a true copy thereof, certified to be a true copy by the auditor of the county where the same has been filed, may also be filed for record in the office of the auditor of another county of the State, or in the office of the secretary of state, or both, but the filing in the office of the secretary of state shall be of no effect until the mortgage shall have been filed with the county auditor.

Section 61.04.040 provides that if a mortgage is filed and indexed as provided by law it shall be held to be full and sufficient notice to all the world of the existence and the conditions thereof. Section 61.04.070 provides that a mortgage given to secure the sum of $300 or more must be filed and indexed as provided by law. Section 61.04.090 provides that when personal property described in the mortgage which has been filed in accordance with law has been thereafter removed from the county in which the mortgage is filed such property is, except between the parties and those having actual notice

thereof, exempted from the operation thereof unless the mortgagee shall, prior to such removal or within 30 days after such removal, cause a copy of the mortgage, certified by the auditor of the county where filed, to be filed in the office of the county auditor of the county to which the property shall be or has been removed or unless the mortgagee shall, prior to such removal or within 30 days after such removal, cause a copy of the mortgage, certified by the auditor of the county where filed, to be filed in the office of the secretary of state according to the provisions of law, or the mortgage be recorded in the custom house, or the mortgagee within 30 days after such removal takes possession of the property.

■ Our review of the statutes above summarized convinces us that there is no statute of the State of Washington which requires or permits the re-recording or filing in Washington of a chattel mortgage on motor vehicles originally located and mortgaged in a sister State and later brought into Washington. Isaacs v. Mack Motor Truck Corporation, supra, confirms the absence of such requirement. In this regard the court stated [50 Wash.2d 326, 311 P.2d 666], "There is no statute in Washington relating to personal property brought into this state from another jurisdiction." The referee in bankruptcy and the district judge entertained a contrary view. In the memorandum opinion of the referee in bankruptcy the referee stated "the said mortgage was never filed except in Multnomah County, Oregon." Then follow the pertinent provisions of R.C.W. Section 61.04.090, after which the memorandum opinion continues,

"The question presented is whether, from the facts herein stated, the above statute has been violated so as to cause loss of his security to the mortgagee as against the Trustee in Bankruptcy. * * *

"The mortgagee could have complied with said statute by filing his mortgage with the Secretary of State and, having failed to do so, the title to the truck and trailer by oper-

ation of law is now vested in the Trustee in Bankruptcy."

The plain language of Section 61.04.-090 relates only to personal property originally mortgaged in one county of Washington and removed to another. This section is a re-recording or filing statute which applies to personal property of all kinds mortgaged in Washington whether or not required to be licensed under some other statute. The provisions of such section do not bear on the problem before us.

In the memorandum decision of the district court it is stated that the chattel mortgage in the instant case is ineffectual as to the trustee in bankruptcy for failure of appellant to comply with the filing requirements of R.C.W. 61.04.070. Such section relates to mortgages executed in the State of Washington on personal property located there. Even if the chattel mortgage in question had been filed or recorded under that section, such filing or recording would have been ineffectual to furnish constructive notice because the chattel mortgage failed to contain the affidavit of good faith required by Section 61.04.020. The provisions of this section likewise do not bear on the problem before us.

■ The recognition by the State of Washington of the validity of a chattel mortgage executed outside of the State of Washington is a rule of comity. A rule of comity may be overcome by some statute to the contrary of a state or by its public policy. Isaacs v. Mack Motor Truck Corporation, supra. As above noted, there is no statute in the State of Washington which is contrary to this rule of comity. However, the Supreme Court stated in the Isaacs case that the public policy of the State of Washington is contrary to this rule of comity as applied to mortgaged personal property which is "removed" to the State of Washington. As expressed in the Isaacs case, this policy is as follows: "Where personal property, subject to a valid chattel mortgage executed in another state, is removed to this state, the lien of the mortgagee will be superior to that of an

attaching creditor of the mortgagor in this state, for goods or services rendered without notice of the chattel mortgage, *only* if the mortgaged property *is removed* (italics ours) without the knowledge or consent of the mortgagee and he, after learning of its whereabouts, complies with our filing laws or proceeds to assert his rights under the mortgage, without unreasonable delay."

The threshold question, therefore, is: Was the mortgaged equipment "removed" to the State of Washington within the meaning of its public policy? No decision of the Supreme Court of the State of Washington has been called to our attention construing the circumstances which would constitute "removal" to Washington of a motor vehicle subject to a valid chattel mortgage executed in a sister State. The court in the Isaacs case did not pass on this question.

As we interpret the public policy of the State of Washington, as set forth in the Isaacs case, such policy requires if a motor vehicle subject to a valid chattel mortgage executed in a sister State is "removed" to Washington without the knowledge or consent of the mortgagee, the mortgagee, after learning of its whereabouts, must proceed to assert his rights under the mortgage without unreasonable delay or with the same diligence comply with the requirements of Section 46.12.010, Section 46.12.030, and Section 46.16.010. In the latter circumstances, such public policy would probably require the mortgagee to secure from the mortgagor a new chattel mortgage complying with the requirements of Section 61.04.020, and then cause the same to be recorded as required by said section and Section 61.04.070.

Certainly not all motor vehicles driven into Washington have been "removed" to that State. Not all motor vehicles from other States which are used in Washington have been "removed" there. The licensing statutes of the State of Washington recognize that motor vehicles licensed in sister States are present in the State and are being used there. In the instant case, the bankrupt obtained a permit from the State of Washington for the use of the mortgaged equipment in Washington under Section 46.16.160. Many decisions from other jurisdictions which recognize the comity rule are to the effect that the mere use, even with the consent and knowledge of the mortgagee, in one State of a motor vehicle mortgaged in a sister State, *does not constitute a "removal"* of such vehicle to the first State so as to subject the vehicle to the licensing requirements of the other State. Vervaris v. Egan, 226 Ill.App. 500; Applewhite Co. v. Etheridge, 210 N.C. 433, 187 S.E. 588; Bankers' Finance Corp. v. Locke & Massey Motor Co., 170 Tenn. 28, 91 S.W.2d 297; Flora v. Julesburg Motor Co., 69 Colo. 238, 239, 193 P. 545; 13 A.L.R.2d 1312, at page 1335 et seq.

It is our opinion that in order to constitute a "removal" of a mortgaged motor vehicle to the State of Washington there must be more than a mere change of location of the motor vehicle. There must be more than casual, temporary, intermittent or transitory presence of the motor vehicle in the State of Washington. There must be something more than the use in Washington contemplated under the permit issued pursuant to Section 46.16.160 in the conduct of interstate operations. "Removal" has a connotation of permanency, a connotation of reestablishment.

In the instant case, the parties concede that prior to the claimed "removal" of the mortgaged equipment the validity of the lien of the chattel mortgage would be determined under the laws of the State of Oregon where the equipment was situated at the time of the execution of the mortgage, and not by the laws of the State of Washington of which the bankrupt—one of the mortgagors—was a resident. Isaacs v. Mack Motor Truck Corporation, supra; In re Nuckols, D.C., 201 F. 437; In re Greene, D.C., 134 F. 137; 57 A.L.R. 702, 710; 13 A.L.R.2d 1312 ff.

We have carefully examined the evidence before the referee in bankruptcy

set forth in the transcript of record. Such evidence reveals that from the time of the execution and delivery of the chattel mortgage in Oregon up to the adjudication in bankruptcy the mortgaged equipment was used in interstate operations, with Portland, Oregon, as the point of origin and as the terminal point. In this respect we quote from the testimony of the bankrupt:

"Q. All right. Did you have any trip leases any place other than out of Portland? A. Well, no, Portland was a terminating point one way or the other.

"Q. For all the produce trucks? A. Yes.

"Q. And do you—where did your truck run? A. Oh, Portland and Los Angeles, and to Seattle."

The transcript reveals no evidence of purely intrastate operations only either in the State of Oregon or in the State of Washington. During all of this period operations in Washington were under the permit issued pursuant to Section 46.16.160. Bankrupt at all times maintained his home at Tacoma, Washington, but the evidence reveals that the equipment was simply parked—not garaged—in the street in front of his home at the end of trips and until it returned to Portland for the commencement of another interstate journey. Payments made by the bankrupt on the note secured by the chattel mortgage were drawn on a Tacoma bank, but there is no evidence in the record showing that the bankrupt's home was the office for the conduct of business relating to the use of the mortgaged equipment. From the record it appears that no headquarters, to use the expression, were maintained, the nature of the business being such as not to require headquarters. Arrangements for the trip leasing equipment apparently were made in Portland, Oregon, by personal solicitation of those who might be in need of equipment for interstate use.

Our review of the record in this case convinces us that the mortgaged equip-

ment was not removed to Washington contrary to the public policy of that State so as to suspend the rule of comity which has been so long established and recognized by the Supreme Court of Washington.

It follows from what we have said that the order of the district court confirming the order of the referee in bankruptcy is clearly erroneous. The order of the district court is reversed.