## Johnson, Sheriff, et al. v. Sauerman Brothers, Incorporated.

(Decided March 25, 1932.)

EWING, KING & KING and LOWELL W. TAYLOR for appellants.

WHEELER & HUGHES and ROBERT LEE BARTELS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appeal presents an issue of the superiority of the rights of an attaching creditor or a conditional vendor.

In August, 1929, the appellee, Sauerman Bros., Inc., sold the Sweet Price Dredging Corporation a lot of levee building machinery for $37,850, a part of the purchase price being represented by promissory notes. The contract of sale contained express provisions that the title and right of possession of the property should remain in the seller until full payment had been made.

The appellant Paige Engineering Company, in May, 1930, sued the dredging corporation on an account for $19,811.76, and had an attachment levied on the machinery, and the sheriff took it into custody. Sauerman Bros. Inc., seasonably set up its title and asked for an order of delivery. By apt pleadings the issue was formed as to the priority of the respective rights, and, upon a trial, judgment was rendered sustaining the superiority of the seller's claim to the extent of $15,925 and interest, that being the unpaid purchase money, and the machinery was ordered to be sold. It is to be noted that, when the attachment suit was instituted, all of the unpaid purchase-money notes were long past due.

There is a contention as to whether the contract is to be regarded as having been executed in Illinois or in Tennessee. The importance of the point relates to the

matter of the laws of the respective states regarding recordation of conditional sale contracts and the effect upon the rights of a subsequent attaching creditor. The sale contract was not recorded anywhere. There is also a disagreeament as to the place of the delivery of the machinery. The contract calls for delivery f. o. b. Chicago, but the machinery was actually shipped and delivered to the purchaser in Tennessee, a short distance below the Kentucky line. However, it does not become necessary to determine either of these issues.

Proof was made that a conditional sale contract was not required to be recorded in Tennessee, but that it was required in Illinois, with the respective resulting effects upon the rights of a party innocent of its terms who obtains a lien on the property covered by it. In the opinion of Munz v. National Bond & Investment Company, 243 Ky. 293, 47 S. W. (2d) —, this day delivered, it is held that under the statutes of Kentucky a conditional sale contract (section 2651b-20) must be recorded in order to preserve the rights retained in the property as against an innocent purchaser. That opinion may be read in connection with this one as bearing upon several points involved.

Although, before the enactment of the Uniform Sales Law in Kentucky in 1928 (Ky. Stats., sec. 2651b-1 et seq.) a conditional sale was regarded as a sale with a mortgage back, yet under the doctrine of comity between states conditional sales made in states which sanctioned them were recognized as valid here. Such was the effect given them in the several cases cited herein, and it is so stated in Kelley v. Brack, 214 Ky. 9, 282 S. W. 190, where a purchaser of an automobile sold was held chargeable with notice of the title of the vendor. But it must be said now, in view of the enactment of the Uniform Law and its current interpretation, that the policy of our law is to require in such instances an official record to be made as a constructive notice of the seller's claim, if there is no actual notice of the undisclosed lien or retention of title upon the part of those claiming adversely. Fry Bros. v. Theobold, 205 Ky. 146, 265 S. W. 498, 499. The rule of comity whereby by courtesy force may be given an extraterritorial law is not recognized when its enforcement would contravene the positive policy of the law of the forum, or if its enforcement "would work injustice to the citizens of the state where the action is

brought or if the rights by terms of the statute creating it is to be enforced by prescribed proceedings within the State of its enactment, or if it is of such a kind that with a due regard for the interest of the parties a proper remedy can be given only in the jurisdiction where it is created." 5 R. C. L. 911, 915; Cable Piano Co. v. Lewis, 195 Ky. 666, 243 S. W. 924. The rights of the parties to this litigation are to be determined by our own law respecting an unrecorded claim of title or lien.

The machinery was built especially for a particular job of levee building on the Mississippi river which the purchaser had under contract. The plans and specifications were submitted to the seller in order that it might construct the machinery with full knowledge of the conditions under which it was to be used. Those plans disclosed that more than 96 per cent. of the work (27,918 feet) was to be done in Kentucky, and that less than 4 per cent. (1,046 feet) was to be done in Tennessee. The shipment was made to a point in Tennessee below the Kentucky line as a more convenient railroad station. The evidence, we think, shows that Sauerman Bros., well knew that the machinery would remain in Tennessee only a brief period of time, and that its permanent situs would be in Kentucky—at least for a period beyond when its purchase-money notes would become due. Actually it stayed in Tennessee about ten days and had been in Kentucky nine months when this litigation was instituted.

The sale contract was made in contemplation of that fact, and it must be considered that its removal into Kentucky was with the seller's consent. Such consideration removes the case from that class wherein it is held that constructive notice of the priority of a lien or reserved title, properly recorded at the place of the sale or original situs, will follow the property into whatever jurisdiction it may be carried, and will affect purchasers or creditors to the same extent as if their rights had been acquired at the place of record. Cable Piano Co. v. Lewis, supra; Tennessee Auto Corporation v. American National Bank, 205 Ky. 541, 266 S. W. 54; Herold Motor Car Co. v. Commonwealth, 216 Ky. 335, 287 S. W. 939; Shelton's Garage v. Walston, 212 Ky. 602, 279 S. W. 959; Kelley v. Brack, supra. Where consent is given to the removal of the chattel, or it was the intention of both parties to the sale that the property would be removed

into another state and have its operations there, the laws of that state control. Fry Brothers v. Theobold, supra.

We have a similiter in the case of Barney & Smith Mfg. Co. v. Hart, 1 S. W. 414, 8 Ky. Law Rep. 223 (decided in 1886), where railroad construction cars were sold by the builder in Ohio under a conditional sale contract for the purpose of being used in Kentucky and which were accordingly brought into this state. It was held that the contract of sale was to be regarded as a mortgage, and that the lien retained was not good against attachment liens of creditors in this state because it was not recorded as required by our laws. As pointed out, the vendor had made its vendee the ostensible owner of the property; had received more than half the purchase money, and after the property had been transported into this State, with its consent, the seller, with the evidence of its lien in its pocket only, was claiming a prior equity against the claims of creditors who had no knowledge of the secret equities.

The statutes of this state make invalid or unenforceable the rights and equities of the seller arising from the transfer of property as against purchasers or creditors without actual notice thereof until such title or rights shall have been placed on public record and constructive notice thereof thereby given. Sections 496 and 523a-2, et seq., Kentucky Statutes; Smith v. Jackson, 232 Ky. 76, 22 S. W. (2d) 420; Munz v. National Bond & Investment Co., supra. The appellee as seller of this machinery could not evade these laws and defeat the equities acquired by an innocent party who extended credit to its vendee upon the faith of his possession and apparent ownership.

The judgment is therefore reversed, with directions to enter a judgment in accordance with these conclusions.