# McAllister v. Gingles.

(Decided May 27, 1932.)

M. B. PFEFFER and LAWRENCE S. GRAUMAN for appellant.

W. W. DOWNING for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming in part and reversing in part.

J. W. McAlister brought this action on October 2, 1928, against Minnie Adelle Stokes Gingles and the Louisville Trust Company to recover on a note for $3,300.85, executed by her and her husband, Ernest F. Gingles, due three months after date, and to enforce a mortgage executed simultaneously on her interest in a piece of property on Cherokee road in Louisville. The trust company held a second mortgage on the property and was called upon to set up its claim. The trust company filed an answer setting up its second mortgage. Mrs. Gingles, who had been divorced from her husband, filed her answer on December 18, 1928, in which she alleged, in substance, that the plaintiff, his servants and agents, showed her the piece of property they proposed to sell her, and that this property was reasonably worth $8,000, and that she agreed to purchase it, but that instead of making her a deed for the property which they had shown her they fraudulently made her a deed for another piece of property, which was worth only about $4,500, and that the note and mortgage in question were obtained from her by fraud and false representation. On March 2, 1929, she filed an amended answer and counter-claim in which she stated that E. F. Gingles was the

agent and employee of the plaintiff that showed her the property and represented to her that this was the property that she was buying and that the property so shown to her was located at the southeast corner of Thirty-Second and Dumesnil streets, but that the property conveyed to her was an adjoining property and not the corner lot, which was shown to her. On April 13, 1929, she filed an amended answer and counterclaim in which she alleged that G. H. McAlister, at the time in question, was doing business as a real estate agent in Louisville under the name of McAlister & Co., and as such was the agent and representative of J. W. McAlister, who resided in Mexico; that Ernest F. Gingles and Albert S. Dietzman were real estate salesmen and employed by McAlister & Co., Gingles being her husband from whom she had since been divorced; that she was only twenty-two years of age and entirely inexperienced in business, but was sorely in need of $500, and the plaintiff, through J. H. McAlister, Albert S. Dietzman, and Ernest F. Gingles, his agents, agreed to lend her the money if she would purchase a certain piece of real estate in Louisville; that she was without funds, and thereupon the parties named conspired together to unload on her the said piece of property by fraud and deceit in such a manner as to fraudulently procure the sum of $2,800.85 from her without any consideration, and so induced her to accept a deed to said property and execute the note and mortgage sued on. She prayed that the mortgage be canceled and that the note be only enforced to the extent of $500, and that the action be dismissed. The allegations of the amended answer were controverted by reply and a large amount of proof was taken. The case was submitted and the court delivered a written opinion on September 4, 1930, holding that the proof failed to sustain Mrs. Gingles' defense that the property she bought was not conveyed to her, but added that the record contains many facts showing that J. W. McAlister, McAlister Land Company, McAlister & Co., and the Business Enterprise Company were only other names for G. H. McAlister, and concluded thus:

"However, it is unnecessary to pursue this matter farther because defendant has not pleaded usury. Counsel to draw order on exceptions and judgment dismissing counterclaim and granting prayer of petition."

On October 11, 1930, Mrs. Gingles filed an amended answer in which she alleged that the Business Enterprise was used by the plaintiff only as a dummy; that the property was in fact sold by the plaintiff to her at a price of at least $500 in excess of its real value, and that there was no consideration for the excess except the loan of the money; that the excessive price was $500 above the market value of the property, and that to the extent of $500 the note and mortgage were usurious; and she prayed that the $500 be purged from the debt on any judgment found against her. The amended answer was taken as controverted of record. The case was submitted on the proof theretofore taken, and the court held the note usurious as to $500 and entered judgment for the plaintiff for $2,800.85, with interest. The plaintiff appeals, and the defendant prosecutes a cross-appeal.

The facts shown by the proof are these: Mrs. Gingles was the daughter of Dr. Stokes, who had died some years before leaving real estate of the value of about $100,000, with a mortgage lien of about $18,000 upon it. By his will Dr. Stokes left two-thirds of his property to his daughter and one-third to his son, who contested the will, and in the settlement of the will contest it was agreed between the son and daughter that she was to have 58 per cent of the property and the son the remainder. She married Ernest F. Gingles who was a real estate man and employed by G. H. McAlister, who was running a real estate business in Louisville in the name of G. H. McAlister & Co., and was also representing his brother J. W. McAlister, who lived in Mexico, and was lending his brother's money for him. He did business at 213 South Fifth street, and in the same office with him the Business Enterprise Company also had its office. It was a corporation which had been formed some years before, the incorporators all being employees of G. H. McAllister, and one of them testifies that he took no stock and put in no money. What the capital was does not appear. E. I. Rawles was the president of the Business Enterprise Company, which had bought from the McAllister Land Company some years before some lots on Dumesnil street and had built houses upon them by borrowing money from the Avery Building & Loan Association. The Building & Loan would not lend money except to individuals, so the Business Enterprise Company conveyed the property to Albert F. Dietzman, and

Dietzman executed a mortgage to the Building & Loan on the lot in question for $4,600, and the money was used to build the house; Dietzman holding the property in trust for the Business Enterprise Company. The house was rented out at $60 a month. The rent was applied to reduce the mortgage; so that the balance on the mortgage in March, 1929, was $4,249.15. Rawles learned that Gingles was in the market for a piece of property and asked him one day if he would consider a piece of property down on Thirty-Second street. Gingles said he and his wife would be willing to buy; that he was in need of some money and had to have it. Rawles told him that the Business Enterprise Company could not advance him any money; that he should talk to G. H. McAlister and see if he would be willing to make a loan on the Cherokee road property of Mrs. Gingles. Gingles saw McAlister, who went out and looked at the property. The lot on Dumesnil street which was to be conveyed to Mrs. Gingles, was priced at $7,000. She was to assume the mortgage on it and pay the balance of the price, which was $2,750.85. McAlister says he knew nothing about the sale, but went out and looked at the Cherokee road property and agreed to make a loan of $3,300.85. The deed was then executed to Mrs. Gingles for the Dumesnil street property, and she executed the note to J. W. McAlister for $3,300.85, and the mortgage on the Cherokee road property to secure it. G. H. McAlister gave her his check for $3,300.85, also gave her his check for $32, which was the rent of the property from March 14 to March 31, 1928, as he had collected the rent for that month. She turned over the check for $3,300.85 to the Business Enterprise Company, and the Business Enterprise Company paid her $550 and gave McAlister & Co. a check for $2,750.85. McAlister says this check was given him, not because he had any interest in the transaction, but because the Business Enterprise Company owed him this much on the lots.

Mrs. Gingles testified, in substance, that she had no idea of buying the property; had no use for it, but that her husband did need $500; and that the purchase of the property and the execution of the mortgage was only a subterfuge to hide the real transaction. She proved by two real estate men that the property was not of value more than $6,500. On the other hand, the defendant proved that the Avery Building & Loan Association only

accepted mortgages for two-thirds of the appraised value and it had accepted the mortgage for $4,600, and also proved by some real estate men that the property was worth $7,000 at the time of the sale, or near that. It had been rented for some time at $60 a month. The proof showed that Mrs. Gingles was living much beyond her income and had fallen in debt to the trust company, which was her guardian. She had a baby which was some months old, and the proof for the defendant showed that she was pleased with the house that was conveyed to her for the reason that it had a sleeping porch which she said would be good for the baby and also had a garage under the house. She had a car and her husband had two cars; they were living in an apartment and, according to the proof for the defendant, thought the house would be better for the baby than the apartment they had.

1. As to the cross-appeal: As the cross-appeal goes to the question whether the plaintiff should recover at all, it will be first considered. It is earnestly insisted for Mrs. Gingles that one property was sold her and another conveyed to her. But by the written application to buy the property, which she signed on March 12, 1928, and submitted to the Business Enterprise Company, the property is correctly described and no one reading the paper could have failed to understand it. Mrs. Gingles says she signed the paper without reading it. She signed the paper at home and she had abundant opportunity to read it. The rule is that a party who can read should read the contract before he signs it. United Talking Machine Co. v. Metcalfe, 174 Ky. 132, 191 S. W. 881. She collected the rents from the tenant from the time the deed was made and had considerable telephone talks with the tenant about the rents and about repairs. Not long after this she and an attorney went to the Business Enterprise Company and together looked over all the papers, and no complaint was then made that the right property had not been conveyed to her. This defense was not set up until much later. In addition to this, it is shown that there was no sleeping porch on the other property and that she expressed satisfaction with the sleeping porch on this property, saying that it would be good for the baby. The garage on the other property was on the lot. The garage on this property was in the basement, and she expressed satisfaction at this, because of the furnace preventing things from freezing. The weight of the evi-

dence sustains the chancellor's finding on the counter-claim.

2. As to the appeal: The ground upon which the court reduced the note $500 was usury. But there was not $500 of usury in the note. She got $550 in cash and the remainder of the money was paid upon the property. The ground upon which the claim of usury rests is that the property was sold to her for $7,000 when it was in fact only worth $6,500. But the value of the property was fixed at about $7,000 when the loan of the Avery Building Association was made upon it, and there is proof for appellant by real estate men that this was the fair value of the property. The court is unable to see that there was any usury in the transaction. If the proof for the appellee is true, she agreed to buy the property at $500 more than it was worth. But the trade was in contemplation for several days before it was closed. She had had abundant opportunity to satisfy herself as to the value of the property. There was no fraud or duress, and where one person buys of another property at a certain price under such circumstances, he cannot claim that the transaction was usurious simply because the price was fixed too high. The fact is, only $550 was lent. If no money had been lent, no one would ever have thought of this plea of usury. The proof is undisputed that the full amount of the note was paid in cash by J. W. McAllister or his agent at the time the note was given. He had no interest in the Business Enterprise Company or in the sale of the land to Mrs. Gingles. On all the facts the judgment reducing the note $500 is unwarranted by the proof. 39 Cyc. 926.

In the final opinion the circuit court said this:

"It has not been proved that the Business Enterprise and J. W. McAlister were one and the same, or that J. W. or G. H. McAllister owned any interest in the Business Enterprise at the time of the transactions attacked."

The uncontradicted testimony of G. H. McAllister is to this effect. Cases must be decided under the proof. Under the proof here the appellee received in fact $3,-300.85, from J. W. McAllister, through his agent, and she must pay back to him the money she borrowed with interest.

On the cross-appeal the judgment is affirmed. On the original appeal the judgment is reversed, and the cause is remanded to the circuit court for a judgment as above indicated.

DIETZMAN, C. J., not sitting.