## Mortgage Union of Pennsylvania et al. v. Wilson.

(Decided March 25, 1938.)

RICHARD P. DIETZMAN and M. B. PFEFFER for appellants.

FRED J. KAREM and BEULAH HAMPTON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

The Mortgage Union of Pennsylvania instituted this action in equity against A. P. Wilson and Jennie Wilson, his wife, seeking to recover the balance due on a mortgage note of $1,550, dated May 15, 1928, with interest from date, and also the sum of $44.32, which it had paid as insurance on defendants' property as authorized and provided by the terms of its mortgage with interest from July 1, 1931, and for the enforcement of its mortgage lien on two lots in a Highland Park addition to secure the payment of such sums. It is alleged in the petition that $617.25 had been paid on the note, $275.68 of which had been applied to the payment of accrued interest and $341.57 applied to the pay-

ment of the principal, leaving a balance of $1,208.43 due and unpaid.

Defendants filed answer, counterclaim, and cross-petition, making J. W. McAlister and George H. McAlister, doing business as and in the name of McAlister & Co., McAlister Land Company, and Real Estate & Mortgage Company of Louisville, cross-defendants.

They denied the material allegations of the petition and alleged in various paragraphs in substance that plaintiff and cross-defendants were one and the same; that there was no consideration for the execution of the note and mortgage or for the pretended assignments thereof, but that the assignments were made for the purpose of cutting off defenses; that the cross-defendants attempted to sell them a lot in the Buechel addition, but that they refused to buy it; that they were, through fraud and misrepresentation, induced to sign the note and mortgage for $1,550, thinking that they only included the sum of $600 borrowed and not the additional $950 for the Beuchel lot; that they had paid $637.25 on the indebtedness, which was $17.29 in excess of the amount lawfully due thereon and which they were entitled to recover. However, in an amended answer, etc., they admitted that the cross-defendants proposed to sell them a lot in Beuchel while the negotiations were pending and took A. P. Wilson to see it, but that the lot was priced at $450; that Jennie Wilson was procured to sign the note and mortgage before the amount which they were to pay had been inserted on the representation that the correct amount would be inserted; and A. P. Wilson was thereafter induced to sign without opportunity to know the contents of the instrument and without knowing that the sum of $1,550 had been inserted instead of the amount borrowed and the $450 representing the price of the Buechel lot.

The affirmative allegations of the answer, etc., were controverted and it was affirmatively alleged that A. P. Wilson agreed to purchase the Buechel lot at the price of $950, and it was known to defendants that the note covered the $600 borrowed as well as the $950 which they agreed to pay for the lot. They also pleaded other affirmative matter unnecessary to detail. On final hearing it was adjudged that the note, mortgage, etc., be canceled as prayed by defendants, and the plaintiff and cross-defendant are appealing.

The chancellor by opinion found in the record, after referring to the confused state of pleadings, and stating that in order to secure a loan for $600 the defendants had been required to execute a note and mortgage for $1,550, including the lot in Buechel at a grossly exaggerated purchase price; and that the $600 mortgage had been fully paid, concluded that the contract was usurious and that the note, mortgage, and other instruments executed by the defendants be set aside.

After the issues had been made and before proof had been taken, A. P. Wilson died and Jennie Wilson was the only witness for the defendants to testify concerning the transaction. She admits her signature on the note and mortgage and on the agreement to purchase the lot in Buechel, but said that at the time she did so, the amount of the note and the mortgage and the purchase price of the Buechel lot were blank and had not been filled in. In fact, she claimed that she knew nothing about the agreement to purchase the lot in Buechel, nothwithstanding an amended pleading alleging in effect the agreement to purchase this lot, but at the price of $450 instead of $950. She admitted, however, that she later learned from her husband that the transaction did include the purchase of the Buechel lot and no protest was made by her or her husband until this suit was instituted. She remembered nothing about going to the clerk's office to sign the mortgage, yet the unimpeached certificate of the deputy county court clerk shows that she and her husband did acknowledge the mortgage in the county court clerk's office on the day the documents were signed. There is in the record an instrument written and signed by Jennie Wilson on July 8, 1929, authorizing appellant to sell the Buechel lot for $1,000 and it is stated in this writing that it is the one for which the mortgaged property stands good. Her recollection as to matters concerning the transaction, except that the consideration, purchase price, etc., had not been inserted in the instruments when she signed them, is very hazy and indistinct; however, the evidence is conclusive that she and her husband did sign all the writings and in fact she does not deny the signature to any of them.

From the evidence as a whole, the conclusion is inescapable that at the time she did know and understand the transaction fully although she and her husband may have made a bad bargain in the purchase of

the property. It will be noted that the chancellor did not base his findings on the alleged fraud or misrepresentation and in fact, under the evidence, could not have done so.

M. B. Pfeffer, an attorney, who was president of the McAlister Land Company at the time the transaction took place, stated that the papers had been prepared and the amount of the note and mortgage and the purchase price of the Buechel property had been inserted in the papers when they were signed; that she went with A. P. and Jennie Wilson to the clerk's office where they acknowledged the mortgage. Her evidence indicated that the transaction was fully understood by the Wilsons and that no protest was made concerning the purchase price of the Buechel property. She testified that $950 was the market price of the Buechel lot at the time the transaction was made and was in keeping with prevailing prices in that subdivision. A real estate agent called as a witness for appellee testified that he was acquainted with real estate values in Buechel and gave as his opinion that in 1928, a lot facing on the Shepherdsville road would be worth $20 a front foot which would make the Buechel lot in controversy worth something like $500.

One of the points argued for reversal is in substance that in the absence of any specific plea of usury the chancellor was without authority to grant relief on that ground and the case of Bush's Adm'x v. Bush, 23 Ky. 53, 7 T. B. Mon. 53, and authorities of like import, are cited which so hold; but from a reading of these and other cases bearing on the question, this rule seems to apply particularly to the defense of usury where no usury is disclosed by the petition. See Maize et al. v. Bradley, 64 S. W. 655, 23 Ky. Law Rep. 993. There are a number of cases holding that it is the duty of a chancellor to purge a transaction of usury manifested by pleading or proof even without a specific plea of usury. Vittetow v. Ames, 51 S. W. 1, 21 Ky. Law Rep. 225; Morgan v. Wickliffe, 110 Ky. 215, 61 S. W. 13, 22 Ky. Law Rep. 1648; Kale v. Jewett, 5 Ky. Law Rep. 333. However, the question of the sufficiency of the pleading in that particular is not deemed material since if usury had been specifically pleaded, it could not, under the proven circumstances and rule prevailing in this jurisdiction, have been sustained. A similar question was presented in McAllister v. Gingles, 244 Ky. 254, 50

S. W. (2d) 551, 553, where in disposing of the question of usury it was said:

"If the proof for the appellee is true, she agreed to buy the property at $500 more than it was worth. But the trade was in contemplation for several days before it was closed. She had had abundant opportunity to satisfy herself as to the value of the property. There was no fraud or duress, and where one person buys of another property at a certain price under such circumstances, he cannot claim that the transaction was usurious simply because the price was fixed too high."

Appellee's pleadings as well as the evidence discloses that A. P. Wilson not only had abundant opportunity to, but that he did look at the lot he agreed to purchase some days before the transaction was completed. At most, he made a bad bargain and, in the absence of evidence to sustain the alleged fraud, relief cannot be granted because of the improvidence or bad business judgment of one of the parties. As already indicated, the chancellor did not, and as we view the matter could not have rested a finding on the alleged fraud because of the insufficiency of the evidence to sustain such allegations.

In Lossie v. Central Trust Company, 219 Ky. 1, 292 S. W. 338, 340, it is said:

"The cancellation of an executed contract is the exertion of the most extraordinary power of a court of equity, which ought not to be exercised, except in a clear case and on strong and convincing evidence. [Citing authorities]."

And that rule has been consistently followed. See Trustees of the Congregational Church of Evarts v. Board of Trustees of Evarts Graded Common School District, 230 Ky. 94, 18 S. W. (2d) 887; Fields v. Cornett, 254 Ky. 35, 70 S. W. (2d) 954; Clarke v. Salyersville, National Bank, 260 Ky. 676, 677, 86 S. W. (2d) 674. These conclusions render it unnecessary to discuss other questions raised in briefs.

Wherefore the judgment is reversed with directions to set it aside and enter judgment in conformity with this opinion.