260 S.W.2d 866 (1953)
MEMPHIS BANK & TRUST CO.
v.
WEST.
No. 28469.
St. Louis Court of Appeals. Missouri.
September 15, 1953.
Rehearing Denied October 16, 1953.
*868 J. F. McVey, D. R. Jennings, Montgomery City, J. W. Buffington, Mexico, of counsel, for appellant.
S. S. Nowlin, P. Pierre Dominique, Montgomery City, Eric Babendeer, Memphis, Tenn., for respondent.
ANDERSON, Judge.
Plaintiff, Memphis Bank and Trust Company, a Tennessee corporation, brought this action of replevin in the Circuit Court of Montgomery County, Missouri, against defendant L. V. West, a resident of Montgomery County. The object of the suit was to recover possession of a 1949 model Studebaker truck and $250 as damages for its detention. Plaintiff's claim of right to possession is based upon a conditional sales contract alleged to have been executed October 11, 1948, between H. B. Teuton, as seller of said truck, and Connie Ehrhardt, as purchaser. Plaintiff is assignee of H. B. Teuton, and defendant West is a purchaser from Ehrhardt.
Defendant answered by general denial, and filed a counterclaim alleging a conspiracy between H. B. Teuton, Connie Ehrhardt, and plaintiff to defraud defendant. Damages were prayed in the sum of $2,675.
Defendant also, by leave of court, filed a third-party petition against Connie Ehrhardt as third-party defendant, based upon alleged fraud in the sale to plaintiff of said truck, and damages were prayed in said petition in the sum of $5,350. Upon filing of said third-party petition, a summons for Connie Ehrhardt, the third-party defendant, was issued, directed to the sheriff of Oregon County, Missouri. This summons was served on Connie Ehrhardt in Oregon County, and return of service was duly filed. However, Connie Ehrhardt filed no pleading in said cause and did not participate at the trial.
At the conclusion of the trial the issues raised by the plaintiff's petition and defendant's answer and counterclaim were submitted to the jury. No instructions submitting defendant's third-party petition were requested by said defendant and third-party plaintiff, and none were given by the court. The jury returned the following verdict: "We, the jury, find for the plaintiff." Thereupon the court entered judgment on the verdict and in said judgment ordered and adjudged that plaintiff retain the possession of said truck and *869 that plaintiff recover its costs. Neither the verdict nor the judgment made any disposition of the counterclaim of defendant West, nor of the latter's third-party claim against Connie Ehrhardt. From the judgment entered, defendant has appealed.
The petition was in conventional form, alleging ownership and right to the possession of the motor vehicle in question and its wrongful detention by the defendant. Defendant's answer, as heretofore stated, was a general denial.
Defendant's counterclaim alleged that defendant purchased the Studebaker truck from Connie Ehrhardt on October 13, 1948, paying for same the sum of $1,675, and receiving from Ehrhardt certain evidence of title and a bill of sale, and a guaranty that the truck was free from liens. It was then alleged that on or about April 15, 1949, plaintiff demanded possession of said truck, stating that it held a chattel mortgage on said motor vehicle, which mortgage had been executed by Connie Ehrhardt in favor of the Teuton Motor Company of West Memphis, Arkansas.
It was further alleged that said purported chattel mortgage was not executed in conformity with the laws of Missouri, Arkansas, or Tennessee; that it was not recorded in Oregon County, where Connie Ehrhardt resided, nor in any other county or state; that the signature of Connie Ehrhardt on said document was irregular, false and fictitious, and said mortgage was not properly assigned to plaintiff, so that plaintiff, by reason thereof, had no title or right to the possession of said motor vehicle.
It was further alleged that plaintiff was aware, or by reasonable diligence could have become aware, of all the facts and circumstances pertaining to said instrument, or should have known that certain persons had conspired to cheat and defraud defendant out of the use and possession of his money and property and, so knowing, became a party to said conspiracy, and that said conspirators knowingly, wilfully, unlawfully, maliciously and wantonly conspired to cheat and defraud the defendant, all to his damage in the following amounts: $1,675, the cost of said motor vehicle, and $1,000 for his loss of time, profits, storage and expenses of preserving said motor vehicle. Judgment was prayed for $2,675 actual and $2,675 punitive damages.
In the third-party petition it was alleged that said third-party plaintiff was an innocent purchaser for value from Connie Ehrhardt of said truck at an auction sale conducted by the Sikeston Auto Sales Company of Sikeston, Missouri, on October 13, 1948, and that $1,675 was paid for said truck; that at said time said third-party defendant stated that said truck had been purchased from Teuton Auto Sales Company of West Memphis, Arkansas, on or about October 2, 1948, and that the certificate of title had not yet been delivered to him; that in lieu of said certificate said third-party defendant delivered to third-party plaintiff a paid invoice issued by the Teuton Motor Sales Company, together with a bill of sale and other evidence of ownership, and did guarantee title and delivery of a certificate of title; and that said third-party defendant had failed and refused to deliver said certificate of title.
It was then alleged that in April, 1949, the plaintiff Bank informed said third-party plaintiff that said bank was, by assignment, a holder in due course of a chattel mortgage on said truck, which mortgage was signed by Connie Ehrhardt in favor of the Teuton Auto Company, and said bank demanded possession of said truck; that said mortgage was not filed of record in Oregon County, Missouri, where Connie Ehrhardt resided, nor was it filed in any other state or county; that said mortgage was not executed according to the laws and statutes of Arkansas, Missouri or Tennessee; that the purported signature of Connie Ehrhardt on said mortgage was void, but, if good as between the parties, it was not good as to an innocent purchaser for value, not being filed for record.
*870 It was further alleged that the third-party defendant knew, or should have known, that the plaintiff bank claimed to be holder in due course of said mortgage purportedly signed by him; that he knew, or should have known, that all his acts were wilful, wanton, unlawful and malicious, and done with the intent to cheat and defraud said third-party plaintiff; or, that if said mortgage were valid between the parties thereto and their assigns, said third-party defendant had entered into a conspiracy with persons unknown to said third-party plaintiff to cheat and defraud said third-party plaintiff of the lawful use and enjoyment of his property. The prayer of said third-party petition was for actual damages in the sum of $2,675, and punitive damages in the same amount.
Connie Ehrhardt purchased the truck in question on October 9, 1948, from H. B. Teuton of West Memphis, Arkansas. H. B. Teuton was at the time doing business under the trade name of Teuton Auto Company. According to the testimony of Mr. Teuton, the selling price was $1,825. A down payment of $825 was made by the purchaser, leaving a balance due of $1,000. To secure this balance Ehrhardt, according to plaintiff's evidence, executed a note and conditional sales contract. The note was in the sum of $1,277.25, which sum represented the balance due on the purchase price, plus a finance charge and cost of insurance in the total sum of $277.25. The note, by its terms, was payable in fifteen monthly installments of $85.15 each, the first installment to become due on November 11, 1948, and the balance payable on the 11th day of each month thereafter until the note was paid.
The conditional sales contract contained the usual provisions found in such contracts. Those material to this case being: that the title should remain in the seller until all sums due were fully paid; that the vendee should not remove said car from the state or transfer any interest therein without the written consent of the holder of the contract; that in the event of the purchaser's default in any of his payments, all remaining installments might, at the option of the holder, be declared due, and, in that event, the holder was authorized to take immediate possession of the property and re-sell same at public or private sale; that the proceeds of said sale should be applied: first, to the expense of retaking, repairing, storing and selling said propertysecond, to the amount due the holder, and third, to the benefit of the purchaser or of such person as under the law might be entitled thereto.
At the time of the sale the vendor delivered to Ehrhardt an invoice showing terms of the sale and designating the buyer as Connie Ehrhardt of Myrtle, Missouri. Neither the note nor the conditional sales contract contains any notation of Connie Ehrhardt's place of residence, or any stipulation from which it could be inferred the parties contemplated removal of the truck from Arkansas to Missouri.
Myrtle, Missouri, is about five miles north of the Arkansas border and, according to defendant's evidence, Rural Route Number 1, which operates out of Myrtle, serves territory in Arkansas.
Carl Lee Taylor, a resident of Dalton, Arkansas, testified that Connie Ehrhardt "lived in Arkansas in the fall of 1948. * * * I would say about October or November, in cold weather.
"Q. Do you know in which county in Arkansas he lived? A. Randolph.

* * * * * *
"Q. How did you know that he lived there at that time? A. I drove a school bus that hauled his children to school. * *
"Q. Did your school bus line run over in Missouri? A. No, just Arkansas * * * the law would not let me haul children that lived across the line. * * * I picked up children at Connie Ehrhardt's place.

* * * * * *
"Q. And you could actually say that Connie Ehrhardt lived in Arkansas at that time? A. His truck had Arkansas license on it.
*871 "Q. You saw his truck? A. Yes, sir.
"Q. What kind was the truck? A. Just a Studebaker pick-up.

* * * * * *
"Q. * * * You don't know exactly when he lived in Arkansas? A. Well, in October or November.
"Q. It could have been either month? A. Yes, could have been either."
At the trial, plaintiff introduced as Plaintiff's Exhibit "G" a chattel mortgage executed by Connie Ehrhardt on August 28, 1948, which bore an endorsement that it was filed in the office of the recorder of Randolph County, Arkansas, on September 7, 1948. In said chattel mortgage the residence of Connie Ehrhardt was given as two and one-half miles south of Myrtle, Missouri, in Randolph County, Arkansas. Plaintiff's Exhibit "H" was a chattel mortgage executed by Connie Ehrhardt on December 30, 1948, and filed for record January 10, 1949. In said chattel mortgage Connie Ehrhardt's address was given as "R. No. 1, Myrtle, Mo.", and his residence was given as "Randolph County, Arkansas".
Plaintiff's Exhibit "F", introduced by plaintiff, was a chattel mortgage executed on February 25, 1949, "between Connie Ehrhardt, Randolph County, Arkansas, party of the first part, and Peoples Bank, Mammoth Springs, Arkansas, party of the second part."
Plaintiff's Exhibit "I", introduced by plaintiff, was a chattel mortgage executed on April 8, 1949, "between Connie Ehrhardt, Randolph County, party of the first part, and Peoples Bank, Mammoth Springs, Arkansas, party of the second part."
Mr. Teuton testified that at the time the note and conditional sales contract were sold to plaintiff he gave the bank the information contained in a statement which he had obtained from Ehrhardt at the time of the sale. The witness then gave the following testimony:
"Q. What did you tell them? A. Connie Ehrhardt was the purchaser's name;
Age 35; White. He lived atI have Mammoth Springs here, but he did not live in that little town.

* * * * * *
"Q. Just read the information off you gave him. A. Mammoth Springs, Arkansas. Post Office in care of Myrtle, Missouri, R. F. D.it is a route. That is where I got this name at the Post Office in Missouri. It is a little place right across the state line there. He is employed by self. Farmer, about 85 acres. The income about $400 a month. He had a few cows. Sold cream; and it gives the Peoples Bank, Mammoth Springs, as one reference, Earl Chester. He is at Pocahontas, Arkansas. This is all in Arkansas. He is county court recorder over there.

* * * * * *
"Q. Outside of what he told you, you don't know where he lived? A. Yes, sir; the bank up there. When people operate a bank you call them up and talk to them and that is what I done, I called the bank.
"Q. * * * I did not ask you anything about calling the bank. I asked you of your own personal knowledge you did not know where he lived. I am not interested in what any banker told you. I am interested in knowing if of your own knowledge you know where the man lived? A. Yes, sir; I believed what he said.
"Q. In other words, you knew nothing except what was told to you? A. Well, the banker said he lived up there."
Mr. Cloy H. Culver, Cashier of the Peoples Bank of Mammoth Springs, Arkansas, testified for the plaintiff. He stated that he had known Connie Ehrhardt for ten or fifteen years. He further testified:
"I am acquainted with him and he told me he lived in Randolph County, Arkansas, and gets his mail at Myrtle, Mo."
There was evidence received on behalf of defendant to the effect that Connie Ehrhardt was at the time of the purchase of the truck a resident of the State of Missouri.
*872 J. W. Fortune, a resident of Myrtle, Missouri, testified that in 1948 Connie Ehrhardt lived on a farm in Oregon County, Missouri, about a mile north of the town of Myrtle.
W. L. Case testified that in 1948 Connie Ehrhardt lived in Oregon County on a farm which he had previously purchased from the witness. On October 5, 1948, Case re-purchased this land from Ehrhardt but, according to the testimony of Case, Ehrhardt continued to live on the farm until the spring of 1949.
Charles Wilkerson, Sheriff of Oregon County, testified that Connie Ehrhardt owned and lived on a farm near Myrtle, Missouri, when he, witness, came back from the army in 1946, and that the last time he was at Ehrhardt's place was in the spring of 1949; that, as far as he knew, Ehrhardt was living in Oregon County in October, 1948.
Defendant West testified that in December, 1948, he visited Connie Ehrhardt in connection with securing a certificate of title to the truck and at that time Connie Ehrhardt was living on a farm in Oregon County. Defendant also stated that he visited Ehrhardt in April, 1949, and that the latter was living on the same farm on which he lived in December, 1948.
Since one of the assignments of error on this appeal is that the court erred in failing to direct a verdict for the reason that plaintiff failed to produce substantial evidence that Connie Ehrhardt signed the conditional sales contract, we deem it necessary to review briefly the evidence relevant to that issue.
H. B. Teuton, who took the stand for plaintiff, testified that, at the time of the sale, Connie Ehrhardt "signed that note there." The witness further testified:
"Q. And the contract? A. Yes.

* * * * * *
"Q. Will you please state whether or not the note and conditional sales contract was executed by Connie Ehrhardt before the truck was delivered to him? A. Yes, sir.

* * * * * *
"Q. And were you personally present when he signed this conditional sale? A. I was the one handed it to him for him to sign.

* * * * * *
"Q. In other words, then, you don't know whether this was Connie Ehrhardt or Mr. Frank Ehrhardt or Mr. Bonnie Ehrhardt, do you? A. Yes, I know, because he had his Social Security and some identification on him. We just don't take people's word like that. * * * They have to have some real identification to show you who they are. You don't do business like you say.

* * * * * *
"Q. You saw a man who represented himself to be Connie Ehrhardt and who showed you certain credentials and which purported him to be Connie Ehrhardt and that man who represented himself to be Connie Ehrhardt, and who had the credentials that had the name of Connie Ehrhardt on them, that is the man who signed Exhibit 4 to your testimony? A. Yes, sir."
Cloy H. Culver, an employee of the Peoples Bank of Mammoth Springs, Arkansas, testified that Connie Ehrhardt had an account at said bank and had drawn checks against his account. He stated that he thought he would know Ehrhardt's signature if he saw it. He then gave the following testimony:
"Q. I hand you an exhibit, purporting to be a contract or conditional sales contract, between the Teuton Auto Company of West Memphis, Ark., and ask you if, in your opinion, the signature thereon is the signature of Mr. Connie Ehrhardt from your recollection of his signature which he used in signing checks on your bank? A I believe it is."
Later, in his examination, the witness was shown a note dated July 1, 1951, signed by Connie Ehrhardt, and was asked if the signature on the conditional sales contract was *873 the same as the signature on the note. The witness replied: "I am honest, I really don't knowI am not a handwriting expert."
The evidence further shows that on November 15, 1948, plaintiff received a check from Connie Ehrhardt drawn on the Peoples Bank of Mammoth Springs, Arkansas, for the amount of the payment due on the contract November 11, 1948. On December 16, 1948, plaintiff received a money order on the post office of Mammoth Springs, Arkansas, in the amount of the December payment. On February 18, 1949, plaintiff received two money orders for the January and February payments, one from West Plains, Missouri, and the other from Mammoth Springs, Arkansas. When the January payment became in default, plaintiff wrote a letter to Connie Ehrhardt on January 26, 1949, with reference to the matter. This letter was addressed to Connie Ehrhardt at Mammoth Springs, Route 1, Myrtle, Missouri. On January 26, 1949, plaintiff received a letter from Ehrhardt stating he would pay the installment due, in a few days. Thereafter, on February 18, 1949, plaintiff received payment. On March 14, 1949, plaintiff received payment of the March installment.
Defendant offered evidence which tended to show that Connie Ehrhardt could not write his name in October, 1948. J. W. Fortune testified that he prepared the deed by which Ehrhardt and his wife conveyed their farm to W. L. Case. This deed is dated October 5, 1948. Fortune testified he signed Connie Ehrhardt's name, and the latter made his mark, to said deed. The witness further testified that on November 3, 1948, Connie Ehrhardt still could not write his name, and on that day executed a bill of sale by making his mark on same. He further stated that he would say "that the signature on the bill of sale was not that of Connie Ehrhardt."
On March 3, 1949, Connie Ehrhardt executed a power of attorney appointing D. R. Jennings as his attorney in connection with the signing and delivery to defendant West of a certificate of title to said truck. Ehrhardt personally signed this document, telling Mr. Fortune at the time that he had learned to write his name.
W. L. Case testified: "I know there was a good long while he (Ehrhardt) couldn't write his name. He finally got so he could sign his name but I don't know when."
In April, 1949, defendant West called upon Connie Ehrhardt at the latter's home. West testified that on this occasion Ehrhardt said he could not write his name. West further testified that Connie Ehrhardt said he did not sign the conditional sales contract, but did not tell him who did sign it. Defendant further stated that Ehrhardt told him later, after April, 1949, that he had learned to write his name.
On cross-examination, defendant testified that he gave Connie Ehrhardt a check, dated October 13, 1948, for the purchase price of the truck. This check was endorsed "Connie Ehrhardt" on October 14, 1948. It was cashed at the Peoples Bank of Mammoth Springs, Arkansas.
J. F. McVey, one of the attorneys for the defendant, testified that he saw and talked with Connie Ehrhardt about April 20, 1949. McVey testified that at the time he asked Ehrhardt about signing checks and the latter told him that "his wife wrote checks for him and took care of all his business up to very recently * * * he said he couldn't write his name. * * * to the best of my recollection and belief he said his wife endorsed checks, signed checks for him until just a short while previous to our coming down there." Mr. McVey further testified:
"Q. Did you ask him whether or not he signed this conditional sales contract that has been marked Plaintiff's Exhibit `B'? A. He said he did not.
"Q. Did he say who signed it? A. He didn't say. * * * I showed him a photostatic copy which Mr. Baubendseer had sent me."
The note and conditional sales contract were assigned to plaintiff bank on October 11, 1948. On October 13, 1948, defendant *874 purchased the truck from Ehrhardt at an auction sale conducted by the Sikeston Auto Sales Company at Sikeston, Missouri. The purchase price was $1,675. Defendant at the time received from Connie Ehrhardt a bill of sale and the invoice given Ehrhardt at the time of his purchase of the truck from H. B. Teuton. Defendant also received a paid invoice from the Sikeston Auto Sales Company. Connie Ehrhardt at the time represented that he was an automobile dealer. For that reason, and because the truck was new, defendant accepted a bill of sale instead of a certificate of title.
J. W. Pattinson, Assistant Cashier of plaintiff bank, testified that he was in charge of the finance department of the bank and that he did not authorize Connie Ehrhardt to take the truck out of the State of Arkansas. He further testified that he was the only person connected with the bank who had authority to authorize a removal of the property from the state.
Defendant took the truck to Montgomery City. Thereafter, defendant attempted to secure a certificate of title from the Missouri Commissioner of Motor Vehicles but was unable to do so. Defendant contracted to sell the truck to Wayne Pease, a farmer living near Vandalia, Missouri, but was unable to complete the sale because he could not secure a Missouri certificate of title. On April 11, 1949, defendant's attorney, Mr. Jennings, wrote to the Teuton Auto Company advising the latter of his client's purchase of the truck and requesting that said company execute a bill of sale which was enclosed in said letter. Said proposed bill of sale, if executed, would by its terms have conveyed said truck to Connie Ehrhardt free from all encumbrances. This letter, with enclosure, was forwarded by Mr. Teuton to the Memphis Bank and Trust Company and received by said bank on April 16, 1949.
According to the testimony of J. W. Pattinson, Cashier of the Memphis Bank and Trust Company, plaintiff had no knowledge of the removal of the truck from Arkansas prior to the receipt of this letter. Plaintiff made no answer to this letter, but referred said letter to the bank's attorney. At that time the April payment under the conditional sales contract was in default. Thereafter, and on July 23, 1949, this suit was instituted.
At the time of the transaction in question there was no requirement under the Arkansas law that conditional sales contracts be filed or recorded to be valid as against subsequent purchasers.
For his first point, appellant contends that the trial court erred in overruling defendant's motion for a directed verdict. In support of this contention it is urged that plaintiff failed to produce substantial evidence that Connie Ehrhardt signed the conditional sales contract.
After reviewing the evidence touching this matter, we have concluded there is no merit to the point made. It appears from the testimony of H. B. Teuton that a man representing himself to be Connie Ehrhardt appeared at Teuton's place of business for the purpose of buying a truck. This man exhibited to Mr. Teuton certain credentials, including a social security card. A purchase was made and this man, according to the testimony of Teuton, signed the conditional sales contract and note. The signature "Connie Ehrhardt" appears on both instruments. The truck purchased by this person was described in the contract as a 1949 Studebaker car; the type of body as a ½ ton pickup; and the motor number was given as 1R 9013. Later, a man named Connie Ehrhardt sold a truck to defendant, and a bill of sale which was received by defendant from this person described the vehicle as a "1949 Studebaker Pickup, Engine No. 1R 9013."
The Connie Ehrhardt who purchased the truck from Teuton, and who, according to Teuton, signed the conditional sales contract, gave his Post Office address as Myrtle, Missouri. The Connie Ehrhardt who sold the same identical truck to the defendant lived, according to defendant's evidence, near Myrtle, Missouri.
*875 Cloy H. Culver, a banker in Mammoth Springs, Arkansas, testified that he knew a Connie Ehrhardt, a depositor in his bank, who told him he lived in Randolph County, Arkansas, and received his mail at Myrtle, Missouri. When shown the conditional sales contract Mr. Culver testified that he believed the signature "Connie Ehrhardt" which appeared thereon was the same as the signature used by Connie Ehrhardt, the depositor in his bank, in signing checks on his account. Plaintiff received a check from Connie Ehrhardt drawn on this bank for the first payment due under the contract.
We believe from the foregoing evidence a jury could reasonably find that the Connie Ehrhardt who sold the truck in question to defendant was the same person who appeared at the Teuton Auto Sales Company's place of business on October 9, 1948, and that said person signed the conditional sales contract which forms the basis of plaintiff's claim. Defendant's evidence, from which a contrary conclusion might be reached, merely made the issue one of fact for the jury's determination.
Appellant's next point is that the motion to dismiss should have been sustained for the reason that plaintiff introduced no substantial evidence that Connie Ehrhardt lived in Arkansas, or any substantial evidence to contradict the positive evidence of defendant that Ehrhardt was a resident of Missouri.
The theory of the defense which, in appellant's view, makes the residence of Connie Ehrhardt of prime importance, is disclosed by defendant's main instruction. By said instruction the jury were directed to find for the defendant if they found: (1) that Connie Ehrhardt was a resident of Missouri; (2) that plaintiff or its assignor knew or should have known that Connie Ehrhardt was a resident of Missouri; (3) that plaintiff failed to file or record the conditional sales contract in the county in this state where Ehrhardt resided; and (4) that defendant purchased the motor vehicle without knowledge of the conditional sales contract.
Appellant's contention seems to be that the facts hypothesized by the instruction were conclusively established by the evidence, and for that reason the conditional sales contract was void as to defendant, under the provisions of Section 428.100 RSMo 1949, V.A.M.S., which section, in substance, provides that all conditional sales contracts shall be considered void as to all subsequent purchasers in good faith, and creditors, unless recorded as provided in cases of chattel mortgages.
It is the general rule that the law of the state where the contract of conditional sale is made, and in which the property has its actual situs, determines the validity of the contract in all respects, both as between the parties thereto and as against third parties, unless it appears from the terms of the agreement or the nature of the transaction that the contract was entered into with reference to the law of some other state or country. Baxter National Bank v. Talbot, 154 Mass. 213, 28 N.E. 163, 13 L.R.A. 52. See Annotation in 25 A.L.R. 1153; 57 A.L.R. 535; 87 A.L.R. 1308; 148 A.L.R. 375; Restatement of Conflict of Laws, Ch. 7, Sec. 275, p. 361; 2 Williston on Sales, Sec. 339; Beale, the Conflict of Laws, Vol. 2, Sec. 272.2, p. 1001.
In conformity with the above mentioned rule it has been held by the great weight of authority that if the contract is valid as against innocent third parties without being recorded in the state where executed, and the contract forbids or does not contemplate removal of the property from said state, it will be enforced in any other state to which the property is, without consent of the seller, removed by the buyer, as against persons designed to be protected by the registration laws of the latter state, although not filed or recorded in that state. Parker-Harris Co. v. Stephens, 205 Mo. App. 373, 224 S.W. 1036; Rodecker v. Jannah, 125 Wash. 137, 215 P. 364; Studebaker Bros. Co. of Utah v. Mau, 13 Wyo. 358, 80 P. 151; Baldwin v. Hill, 4 Kan.App. 168, 46 P. 329; Goetschius v. Brightman, 214 App.Div. 158, 211 N.Y.S. 763; Smith's Transfer & Storage Co. v. Reliable Stores *876 Corp., 61 App.D.C. 106, 58 F.2d 511; Denkins Motor Co. v. Humphreys, 310 Ky. 344, 220 S.W.2d 847. Principles of fairness and commercial expediency seem to underlie this rule. Stumberg, Conflicts of Laws, 366; Mercantile Acceptance Co. v. Frank, 203 Cal. 483, 265 P. 190, 57 A.L.R. 696.
Under this state of the law, the domicile of the conditional vendee becomes important only as evidence from which an inference of intent may be drawn in those cases where it is sought to establish that the parties at the time of sale contemplated removal of the property to the state of the purchaser's residence. Where the parties contemplate removal of the property to said state they are held to have intended to contract with reference to the law of the vendee's domicile. Weber Showcase & Fixture Co. v. Waugh, D.C., 42 F.2d 515; Enterprise Optical Mfg. Co. v. Timmer, 6 Cir., 71 F.2d 295; Smith's Transfer & Storage Co. v. Reliable Stores Corp., 58 F. 2d 511; Jones, Chattel Mortgages & Conditional Sales, 6th Ed., Sec. 1160; 2 Williston on Sales (Rev.Ed.1948), Sec. 339. See also 55 C.J. 1208, 1264, 1265; 78 C.J.S., Sales, §§ 568, 578; 11 Am.Jur. 362 et seq.; 47 Am.Jur. 129; Johnson v. Sauerman Bros., 243 Ky. 587, 49 S.W.2d 331. The defense in the case at bar, as indicated by defendant's main instruction, seems to be based upon such theory.
In the case at bar the plaintiff made a case for the jury without proof of Ehrhardt's place of residence. Plaintiff's evidence showed the following: that the contract was executed in the State of Arkansa; that the property at the time had its actual situs there, and was delivered to Connie Ehrhardt in said state; that by the terms of the contract the conditional vendee was forbidden to remove the property from the state without the written consent of the holder of said contract; that Connie Ehrhardt at the time he executed the contract represented he lived in Arkansas and that plaintiff never consented to and had no knowledge of the removal of the property from the State of Arkansas.
Under the foregoing facts, plaintiff made a case for the application of the Arkansas law without proof of Connie Ehrhardt's residence in said state. Under plaintiff's proof, the domicile of Connie Ehrhardt would not be a factor in determining the governing law of the contract. Lustig v. Montgomery, 236 Mo.App. 374, 156 S.W.2d 782. In reaching this conclusion we have rejected the evidence and all inference therefrom unfavorable to plaintiff's case.
The aforementioned rule is the one to be followed in passing upon the propriety of the court's ruling on defendant's motion to dismiss. The evidence of defendant from which an inference might be drawn that the parties at the time of the sale contemplated the removal of the property to Missouri, even though uncontradicted, simply made an issue for the jury. However, there was substantial evidence introduced by the plaintiff from which the jury could reasonably find that Connie Ehrhardt actually lived in the State of Arkansas at the time he executed the conditional sales contract, and that he so advised H. B. Teuton, the conditional vendor, of that fact.
We refer to the testimony of Carl Lee Taylor, heretofore set out; the written declarations contained in the various chattel mortgages introduced by plaintiff at the trial without objection; the oral declaration made by Ehrhardt to Mr. Culver, Cashier of the Peoples Bank of Mammoth Springs; and the oral declaration made to Mr. Teuton at the time of the sale, which was incorporated in a statement that was delivered to plaintiff at the time the latter purchased the note and conditional sales contract. Declarations of a party whose domicile is in question, including those made before, at, and after the time the domicile is in dispute, may be considered in determining the place of residence of the declarant. Trust Co. of New Jersey v. Spalding, 125 N.J.Eq. 66, 4 A.2d 401; Youngblood v. Rector, 126 Okl. 210, 259 P. 579; Watters v. Ralston Coal Co., D.C., 38 F.Supp. 16; Locomotive Engineers Mutual *877 Life & Accident Ins. Ass'n v. Laurent, 7 Cir., 172 F.2d 889; New York Trust Co. v. Riley, 24 Del.Ch. 354, 16 A.2d 772; Bassett v. Bassett, Ohio Com.Pl., 68 N.E.2d 409; Smith v. Smith, 364 Pa. 1, 70 A.2d 630; In re Heymann's Will, 190 Wis. 97, 208 N.W. 913.
It is next urged that the motion for directed verdict should have been sustained for the reason that the conditional sales contract was not valid because the Teuton Auto Company was not a legal entity capable of contracting. There appears to be no merit to this contention. Section 68-118, Arkansas Statute 1947, Annotated, provides that one who signs an instrument in a trade name, or assumed name, will be liable to the same extent as if he had signed his own name. Under this statute, H. B. Teuton was bound, and the contract valid, even though signed in the name of Teuton Auto Company.
The court did not err in overruling defendant's motion to dismiss.
Appellant complains of the giving of plaintiff's Instruction P-1. By this instruction the jury were told that the issue between the parties was the right to the possession of the truck; that if they found that plaintiff was entitled to the truck, "you are to return your verdict that, we the jury, find for the plaintiff. If, on the other hand, you find that the defendant, L. V. West, is entitled to the truck, then your verdict will be that, we the jury find for the defendant and assess his damages at $___."
Appellant's complaint against this instruction is that it failed to hypothesize the facts necessary to authorize a recovery for plaintiff under the law, and for that reason gave the jury a roving commission to find for plaintiff on any theory they might choose.
It is apparent that the court, by this instruction, intended merely to advise the jury as to the form of their verdict. Other instructions were given which hypothesized the facts necessary to a verdict, and it is our belief that the jury, after reading all the instructions given, could not have been misled as to their duty, which was to render a verdict only in accordance with the facts hypothesized in the instructions.
Instruction P-2 charged that in Arkansas a conditional sales contract need not be acknowledged to be binding. Appellant's complaint against this instruction is that by so instructing, the court inferentially told the jury that it was convinced that Connie Ehrhardt was a resident of Arkansas. This is equivalent to an assertion that the instruction was erroneous as assuming that the residence of Ehrhardt was in Arkansas. The objection could be valid only if the domicile of Ehrhardt was a factor in determining the law governing the formal requisites of the contract. However, it has been often stated and held that the lex loci contractus, the place where the contract is made, and not the domicile of the parties, governs as to the form of the contract, and as to its execution and acknowledgment. 17 C.J.S., Contracts, § 15, page 344; 13 C. J., Contracts, Sec. 22, p. 252. In the case at bar there was no real issue as to where the sale took place, and the court, after requiring a finding that the contract was executed, quite properly advised the jury that, under the law of Arkansas, no acknowledgment was necessary. Sutherland on Stat. Const., Sec. 218.
By Instruction P-3 the jury were instructed that if they found that Connie Ehrhardt bought the truck in question from the Teuton Auto Company and gave said company the conditional sales contract and note mentioned in the evidence, their verdict should be for plaintiff.
Appellant complains of the use of the word "gave", contending that it was ambiguous and confusing. The word "give", when used in connection with commercial transactions, means "execute and deliver". Webster's New International Dictionary, 2d Ed.
It is also urged that the instruction is erroneous because it ignored the issue of residencea *878 vital matter in the determination of the validity of the contract and of plaintiff's rights.
As we have heretofore pointed out, according to plaintiff's evidence the residence of Connie Ehrhardt was not a vital factor in the determination of the validity of the contract and of plaintiff's rights thereunder. Instruction P-3 presented plaintiff's theory of the case and was not erroneous because it ignored the theory of defense, for the reason that the latter was fully covered by defendant's main instruction.
Appellant next complains of Instruction P-4, which charged that if the jury found that Connie Ehrhardt did not sign the note and conditional sales contract, but consented or authorized the same to be done, or adopted or ratified the signing of it, the verdict should be for the plaintiff. Appellant contends there is no evidence to support the facts hypothesized. A sufficient answer to this contention is that the court, at defendant's request, gave the counterpart of this instruction authorizing a verdict for defendant on plaintiff's cause of action, and for defendant on defendant's counterclaim. Error common to the instructions of both parties does not constitute reversible error. See 1 Raymond Mo. Inst.Juries, Sec. 207, p. 180, for cases supporting this proposition. The complaint that the instruction failed to cover the defense relied on must be ruled against appellant, on the ground that said defense was fully covered by defendant's main instruction.
By Instruction No. P-5 the jury were advised that under the Arkansas law neither plaintiff nor its assignor was required to file or record the conditional sales contract to entitle either to possession of the truck as against subsequent innocent purchasers from Connie Ehrhardt. Without this instruction the jury might have been misled into the belief that the contract was void as to defendant because not filed or recorded in Arkansas. Said instruction did not, as urged by appellant, preclude consideration of the defense submitted in defendant's verdict-directing instruction, which defense was that the contract was void because it was not filed or recorded in Missouri.
By Instruction No. P-6 the court charged that it would be immaterial whether Connie Ehrhardt lived in Arkansas or Missouri if the Teuton Auto Company and the Memphis Bank and Trust Company did not know the truck would be removed to the State of Missouri. Appellant contends that this instruction is wrong for the reason that it did not properly declare the law.
In some jurisdictions it is held that if the conditional vendor at the time of the execution of the contract knows that the purchaser is a resident of a foreign state, and knows that the property is to be taken immediately into said state, there to remain permanently, the parties are deemed to have contracted with reference to the laws of said foreign state. United Const. Co. v. Milam, 6 Cir., 124 F.2d 670; Meyer Herson Auto Sales Co. v. Faunkhauser, 62 App.D. C. 161, 65 F.2d 655. It was to escape liability on this theory that prompted plaintiff to request, and the court to give, Instruction No. 6. In our opinion, the instruction was proper. Beale, Conflicts of Laws, Sec. 275.2.
Appellant also contends that the judgment should be reversed and the cause remanded for new trial because the verdict and judgment fail to dispose of defendant's counterclaim.
It appears that defendant's counterclaim was purely defensive in nature, and that the verdict for plaintiff, in effect, actually disposed of all issues, though defective in form. Under Section 512.160 RSMo 1949, V.A.M.S., and Commercial National Bank of Kansas City, Kansas, v. White, Mo.Sup., 254 S.W.2d 605, it is our duty, under the circumstances, to give such judgment as the trial court ought to have given, or direct the trial court to enter such judgment as we deem agreeable to the law. In our opinion, the judgment appealed from should be modified by the inclusion therein *879 of an order that defendant take nothing by his counterclaim.
Appellant also complains that the judgment is erroneous because it does not dispose of the third-party petition filed by defendant West against Connie Ehrhardt.
As heretofore stated, it appears from the record that upon the filing of said third-party petition a summons was issued in said cause directed to the Sheriff of Oregon County, and there served. This service would not have been sufficient to confer jurisdiction over Connie Ehrhardt had the suit been an original action filed in Montgomery County. Yates v. Casteel, 329 Mo. 1101, 49 S.W.2d 68.
Section 507.080 RSMo 1949, V.A. M.S., which authorizes third-party practice, does not purport to extend the venue statute, Section 508.010, RSMo 1949, V.A.M.S. It is our opinion, therefore, that the court in the case at bar acquired no jurisdiction over the person of Connie Ehrhardt by virtue of the process issued and served in Oregon County, and that the court should have dismissed said third-party petition before proceeding to trial.
Respondent has filed a motion to dismiss the appeal or affirm the judgment on the ground that the appellant's brief fails to comply with Rules 1.15 and 1.08 of the Supreme Court of Missouri. Said motion is overruled.
The judgment appealed from is modified by inserting therein the following: "and that defendant take nothing by his counterclaim herein, and that the third-party petition filed by defendant is hereby dismissed."
The judgment, as modified, is affirmed.
BENNICK, P. J., and ADAMS, Special Judge, concur.